WILLIAM FITZGERALD

*v.*

MATHIAS BENNER *et al.*

*Opinion filed February 21, 1906.*

1. EVIDENCE—*when words used over telephone are part of the res gestæ.* Where a sub-contractor, called as a witness for the plaintiffs in a suit on a building contract for the purpose of showing that the delay was not the fault of the plaintiffs, who were to furnish certain of the iron work, testifies that he was at the building day after day when there was an abundance of iron on the ground but was unable to go ahead with the work, it is not error to permit him to say that he telephoned every day to plaintiffs, "Can't I start?" since those words are part of the *res gestæ,* and are not hearsay, even though the defendant was not present.

2. SAME—*when permitting witness to refresh his recollection by use of memorandum book is not error.* In an action on a building contract it is not error to permit a witness to refresh his recollection as to dates and weather conditions by reference to a memorandum book, in which he made the entries in the usual course of business as the work progressed.

3. SAME—*when refusal to strike out statement of a conclusion is not harmful.* Where a witness in an action on a building contract has detailed all the conversations between him and the defendant and the architect relating to the payment of the amount in controversy, refusal of the court to strike out the expression "he kept putting me off," is not prejudicial error, even though the expression be regarded as a statement of a conclusion of the witness rather than a statement of fact.

4. BUILDING CONTRACTS—*when absence of architect's certificate does not defeat recovery.* Where work has been substantially performed under a building contract, the only thing lacking being the certificate of the architect which has been improperly withheld, an action will lie to recover the amount due, and proof may be made as to the excuse for not procuring the certificate.

5. SAME—*what constitutes bad faith on part of architect.* An architect who inspects the work and accepts it as being in compliance with the contract, but refuses without good reason to deliver his certificate, is guilty of bad faith, and whether delay in payment thus caused is unreasonable and vexatious, so as to warrant allowance of interest, is a question for the jury, where the architect is the owner's agent and acts under his direction.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. JOHN GIBBONS, Judge, presiding.

This is an action of assumpsit, brought on July 10, 1900, in the circuit court of Cook county by the appellees, William D. Kent and Mathias Benner, constituting the firm of M. Benner & Co., against the appellant, William Fitzgerald, to recover a balance of indebtedness, claimed to be due upon a building contract, together with interest thereon. The trial resulted in a verdict and judgment in favor of the appellees for $6000.00. This judgment has been affirmed by the Appellate Court, and the present appeal is prosecuted from such judgment of affirmance.

The declaration, as first filed, consisted of the common counts for goods sold and delivered, for the reasonable value of said goods, for money loaned and advanced, and upon account stated, the *ad damnum* being laid at the sum of $15,-000.00. Afterwards, on December 24, 1901, certain additional counts were filed, wherein the building contract was set forth *in hæc verba,* and wherein it was alleged that the appellees had fully completed said contract, and there was due to them from the appellant upon the same the sum of $6408.63. The second additional count, after stating the contract and that it had been completed, and that a certificate of the amount due had been demanded, and that the architect had figured up and agreed as to the amount due, alleged that the architect, acting in bad faith and in collusion with appellant as owner, refused to issue a final certificate to the appellees. Pleas of the general issue, and denying the charges of collusion and bad faith, were filed.

The building contract in question was dated August 22, 1892, and was executed between appellant, as party of the first part, and appellees, under the firm name of M. Benner & Co., as parties of the second part, wherein Benner & Co. agreed to erect and complete the iron work for a six-story

flat-building, belonging to the appellant, at the corner of Twenty-sixth and State streets in Chicago. The price to be paid by appellant to appellees was fixed by the contract at a certain sum for castings per ton, another sum for beams per ton, and other sums per pound for punching, coping, riveting, and for anchors, steel plates, stirrups and straps; and also a certain sum was to be paid as the price per square foot for Hyatt lights. Between August 22, 1892, and some date in the winter of 1892 and 1893, or in the spring of 1893—about which latter date the parties differ—material and labor, amounting to $22,908.63, are alleged to have been furnished by the appellees. There were paid to them upon the contract the following amounts: November 23, 1892, $5000.00; December 17, 1892, $5000.00; February 21, 1893, $6500.00, making $16,500.00 as the total amount of payments, which, taken from $22,908.63, leaves $6408.63, being the amount due according to the claim of the appellees.

By the terms of the contract the work was to be done under the direction and supervision of Clinton J. Warren, an architect, who was required to certify in writing as to all materials, workmanship, etc. Payment was to be made upon presentation of certificates, signed by the architect. The contract contained the following provision: "And in case the parties shall fail to agree as to the true value of extra or deducted work or the amount of extra time, the decision of the architect shall be final and binding. The same in case of any disagreement between the parties relating to the performance of any covenant or agreement herein contained." The contract also contained the following: "Damages for delay will be $50.00 per day, for each and every day the work remains unfinished after above date. Damages for delay as mentioned in specifications, will be deducted from the contract price as liquidated, and furthermore fifteen percentum of the value of all work done and materials furnished shall be held back until this contract is declared by Clinton J. Warren completed, or if contract is

completed at specified time or times, said fifteen percentum kept back shall then be paid four days after the work of this contract is declared by the architect finished, provided said work and materials are free and discharged from all claims, liens and charges whatsoever, and so kept during the process of said work. Time,—Basement and first story, September 29; second, October 6; third, October 13; fourth, October 20; fifth, October 27; sixth and roof, November 1. Time contingent on strikes, fires, unavoidable accident, or causes beyond our control." By the terms of the contract Benner & Co. agreed "to furnish at their own expense and under the direction and supervision of Clinton J. Warren, to be approved and certified by a writing or certificate under the hand of the said Clinton J. Warren, all materials, workmanship and labor, required by the said drawings and specifications, and to protect the materials and workmanship from damage by the elements or otherwise until the completion of the work, and to remove all improper materials and work, when directed by architect, and to substitute therefor such materials and work as, in his opinion, are required by the drawings and specification aforesaid, and will deliver said building to the said party of the first part free and discharged of all claims, liens and charges whatsoever, completely finished at such time as set forth in the specification." No time seems to have been stated in the specification, the language therein being as follows: "Time: All work to be finished on or before—."

The following instructions were given by the trial court to the jury, to-wit:

16. "The court instructs the jury that in this case he has not expressed, and does not in any of these instructions express, any opinion on the facts of the case, nor upon the credibility or want of credibility of any witness. The facts must be decided by the jury from the testimony which is received in open court. Offered testimony, to which objection was sustained, or which was stricken out by order

of the court, is not before the jury and should not be considered in arriving at your verdict. Statements of counsel for either side, if any, which are unsupported by the testimony, or which are irrelevant to this case, should not be considered. The instructions given you by the court are to be considered as a series. The court has not expressed an opinion on the facts, and has not expressed an opinion on the credibility or character of any witness, and the court has no right to do so, and if the jury overheard anything said between the court and counsel in discussing questions of law or otherwise, the jury should not consider anything but the evidence introduced before them and the law as laid down in the instructions of this court.

17. "If you believe from the evidence and the instructions of the court that the architect or superintendent named in the contract in this case accepted the work performed by the plaintiffs as the work progressed, as required by the contract, and if you further find from the evidence that such contract was completed in accordance with the terms thereof, and you further believe from the evidence that, after the contract was completed, the architect accepted the work performed by the plaintiffs, and if you further believe from the evidence and instructions of the court that the architect withheld or refused to deliver to the plaintiffs his statement, or certificate in writing, showing the amount due the plaintiffs, if anything, either because the defendant, the owner, directed him, the said architect, to withhold or not to deliver the same, or for any other reason not in accordance with the terms of the contract between said parties, if shown by all the evidence in this case, then you are instructed, if you find such facts proven from the evidence, that the plaintiffs would not be bound to produce such certificates, before they were entitled to recover in this case.

18. "The court instructs the jury that, if you believe from the evidence that the architect, Clinton J. Warren, in this case inspected the work in question and knew its char-

acter and quality, and that said architect accepted the work done and materials furnished by the plaintiffs as being in compliance with and in full performance of the contract on plaintiffs' part, and if you further believe from the evidence, and under the instructions of the court, that said contract was completed in accordance therewith, and you further believe from the evidence that said architect in bad faith and without just cause refused to deliver to the plaintiffs a final certificate, showing such acceptance and completion and the balance due the plaintiffs, if any, then the plaintiffs are entitled to recover whatever, if anything, the jury shall find from the evidence is due upon the contract.

19. "The court instructs you that if you find from the evidence and under the instructions of the court, that the plaintiffs are entitled to recover from the defendant, and if you find from the evidence that such money as you find the plaintiffs are entitled to, if any, was withheld by an unreasonable and vexatious delay of payment, then you may allow the plaintiffs interest at the rate of five percentum per annum on such sum, if any, as you believe from the evidence and under the instructions of the court, the plaintiffs are entitled to recover from the defendant from the date the same became payable, as may be shown by the evidence in the case; what the facts are you must determine from the evidence."

DAVID K. TONE, and WILLIAM H. FITZGERALD, for appellant.

WILLIAM A. DOYLE, for appellees.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

In this case the evidence shows that the labor and material, for the price of which this suit is brought, were furnished by the appellees; and the defense of the appellant

rests upon substantially two grounds. The first ground of defense is, that there can be no recovery, because the certificate of the architect was not produced, as required by the contract, and because the certificate was not shown to have been withheld fraudulently, or by reason of fraud on the part of the architect. The second ground of defense is, that there can be no recovery, because the damages, alleged to have been sustained by the appellant by reason of defective material and delay in completing the work, exceeded the amount claimed by appellees. That is to say, according to the claims of appellant, the appellees were continuously in default from September 29, 1892, until February 15, 1893, a period of 139 days, and the liquidated damages for the delay, at the rate of $50.00 a day for 139 days, would amount to $6950.00, which exceeds the sum of $6408.63, claimed by the appellees to have been due them. The main contention of the appellees in regard to the delay was, that they were delayed in the performance of the contract by the fault of other contractors. The objections made by appellant, which range themselves under, and bear upon, the general defenses above stated, will be considered in their order.

*First*—Appellant contends that the court below erred in the admission and exclusion of evidence.

It is said that the court erred in permitting appellees to prove, that the interest on the claim against appellant from December 15, 1892, up to the date of the trial amounted to $3407.00. It is claimed that there is no evidence, showing the completion of the work on December 15, 1892. We have examined the testimony, and find that there was evidence, consisting of the testimony of several witnesses introduced by the appellees, showing that the work was completed about the middle of December, 1892. It is true that testimony, introduced by the appellant, tended to show that the work was not completed until February 15, 1893, but the court, under its instructions, properly submitted the evidence to the jury upon this question, and it was for them to determine

which was the correct date of the completion of the work. It is also insisted that the court erred in allowing this testimony in regard to interest, upon the alleged ground that the appellees did not make out a case of vexatious and unreasonable delay of payment. It is undoubtedly true that, in order to justify a recovery of interest, the claim must be liquidated, and it must be shown that the parties figured upon a definite amount as being due, and that payment has been vexatiously and unreasonably withheld. (*Haight* v. *McVeagh,* 69 Ill. 624; *Imperial Hotel Co.* v. *Claflin Co.* 175 id. 119.)

There was evidence, introduced by the appellees, tending to show that appellee, Kent, after January 18, 1893, went to the office of the architect, Warren, and submitted the account, which was checked up, and the sum of $6000.00 was agreed upon as being due appellees, and that a certificate of that amount was made out under the direction of the architect, Kent consenting to throw off the $408.63 rather than have any quarrel or dispute. The evidence tends further to show that the architect put off the payment of the amount, thus agreed to be due, at one time by asking that it be allowed to rest for a day or two until the architect could see appellant; at another time, several weeks thereafter, when Kent demanded the certificate, the architect said that he had had a talk with the appellant, and asked that it be allowed to rest a while longer as appellant was pressed for money; again, after the lapse of several weeks, Kent was told by the architect that appellant had instructed him not to give appellees a certificate; and the architect told Kent that he had better see the appellant, and have a talk with him, and fix it up; Kent thereupon went to see Fitzgerald, who told him to go to the architect, saying: "You get a certificate from the architect, and I will pay it;" when Kent went back to the architect, he was informed by him again that Fitzgerald had told him (the architect) not to give the certificate. When Kent returned to the architect after the fourth or fifth

visit, the latter told him that he was entitled to his money, but that he would have to see Fitzgerald, the owner of the building, who had given him an order not to issue the certificate; thereupon, on seeing Fitzgerald, he was again told by the latter, "You get a certificate and I will pay it;" and thereafter, when Kent attempted again to see the architect, he found that the office of the latter was closed, and he had left for Europe. This evidence tended to show a vexatious and unreasonable delay of payment, and therefore justified the introduction of testimony in regard to the amount of interest. Independently, however, of any other consideration, it sufficiently appears that the jury did not allow the appellees any interest, and, therefore, the introduction of the testimony in question could not have done the appellant any harm. If the sum of $3407.00 had been allowed for interest, the verdict would have been $9407.00. As, however, the verdict was only for the sum of $6000.00, being the amount of principal agreed upon by the parties, it is clear that there was no allowance of interest.

The court is said to have erred in permitting a witness for the appellees, named Anderson, to state what he said over the telephone at a certain time. Anderson appears to have been a sub-contractor under appellees, who was to furnish certain of the iron work. He was put upon the stand for the purpose of showing that the delay in the putting up of the iron work was the fault of appellant. Anderson states, that he was at the building from the 5th to the 30th of September almost every day, but was unable to go ahead, stating that the iron was lying all around the street, and they were kicking about it blocking up the street. He then makes the following statement: "I asked every day, telephoned every day, 'Can't I start?' because I had a gang idle." The objection is, that this was a conversation by telephone between Anderson and appellees, at which the appellant was not present, and that, therefore, the evidence was mere hearsay and should have been excluded by the court. The only

language, shown to have been used over the telephone, are the words "Can't I start?" These words were a mere exclamation, which constituted a part of the *res gestæ,* as being calculated to illustrate or picture the condition of affairs then existing at the building. It tended to show the reason why appellees could not go ahead with the work. The words were not the narration or history of a past event, but threw light upon the reason why it was impossible to proceed with the work. In *Maher* v. *City of Chicago,* 38 Ill. 266, where certain city officials made statements during the prosecution of work for a corporation to persons engaged on the work, it was said (p. 273) : "Counsel for the city contend that the statements of the city officials were improperly received as evidence. These statements were made at the commencement and during the progress of the work to persons engaged upon it, and are admissible as showing the manner and circumstances, under which it was begun and prosecuted. They are part of the *res gestæ.*" In *Kyner* v. *Boll,* 182 Ill. 171, it was said (p. 186) : "It is a well settled principle in the law of evidence, that, whenever it becomes important to show, upon the trial of a cause, the occurrence of any fact or event, it is competent and proper to also show any accompanying act, declaration or exclamation, which relates to or is explanatory of such fact or event. Such acts, declarations or exclamations are known to the law as *res gestæ.*" (*Lander* v. *People,* 104 Ill. 248).

It is furthermore objected that the court permitted plaintiffs to prove the time when the work was completed by entries, made in a private memorandum book. When the witness, Anderson, was upon the stand, he was questioned as to the time when the work was completed. He stated, independently of any memorandum book, that the work was completed about the middle of December, 1892. He then made use of the memorandum book merely for the purpose of refreshing his recollection; and counsel for appellant drew from the witness upon cross-examination, that the

witness remembered the date, because he had entered it in his book. The attention of the witness was called by counsel for appellant to the book, which the witness had kept as the work progressed. A part of the delay in the progress of the work was not only attributed to the slowness of other contractors, such as the masons and carpenters, but also to the condition of the weather. Anderson had minuted in his book the days upon which, during the progress of the work, it had rained, and, upon cross-examination, counsel for appellant asked him to look over his book, and tell how many days it rained during September and October, 1892. After this cross-examination, the witness was asked by counsel for appellees to give the condition of the weather between certain dates in December, 1892. It was to this question that counsel for appellant objected, which objection was overruled. We concur with the Appellate Court when they say in their opinion: "We do not think that there is any merit under these circumstances in the contention of appellant in regard to this book." The book itself was not introduced in evidence, and it appeared that the entries therein were made by the witness at the time of the events spoken of by him, and in the course of his duty, as an employe of appellees, in and about the particular business in controversy. In *Lawrence* v. *Stiles,* 16 Ill. App. 489, it was said: "It is well known that memoranda and entries made at or about the time of the transactions to which they relate, in the regular and usual course of business and of the employment and duty of the person who made them, have long been admitted as part of the *res gestæ.*"

It is furthermore objected that the appellee, Kent, when a witness upon the stand, was permitted to use the expression, "he kept putting me off." A motion was made to strike out this expression, and was refused by the court, to which exception was taken. Counsel for appellant say that, in the use of these words, the witness was stating a conclusion only, and not a fact. We think that, under the circum-

stances above detailed, it was a statement by the witness of a fact; but whether this be so or not, the expression was harmless, for all the conversations between appellees and the appellant and the architect, relating to the payment of the amount in controversy, were fully and particularly given in the testimony. Where the actual and specific language of all parties is fully given, there can be no prejudice or harmful effect if the witness does state a conclusion. (*Sokel* v. *People,* 212 Ill. 238.) It is insisted that the court erred in refusing to permit Kearns, the assistant of the architect and superintendent of the work under the architect, to state what he said to Warren at the time certain letters were written to appellees, calling attention to the defects in certain columns put up by appellees. After an examination of the record, we are satisfied that the witness, Kearns, did state all that was said in reference to the columns. He says he told the architect the columns were imperfectly cast, etc. It is also said that, when the witness, Kent, stated that he had been informed that the architect had gone to Europe, appellant's counsel was not permitted to cross-examine him as to the persons, from whom he had obtained such information. The record shows that he was allowed to give at least the names of three persons, who had so informed him, and, when he had given such names, it was not error on the part of the court to refuse to permit counsel to proceed further upon that subject.

*Second*—Instruction, numbered 17, given for the appellees, set forth in the statement preceding this opinion, is objected to upon the alleged ground that it assumes, as a fact, that appellant directed the architect to withhold and not deliver the final certificate to the appellees. The instruction is not justly subject to the criticism made upon it. The part of the instruction, which is said to contain the assumption complained of, is preceded by the words: "If you further believe from the evidence," etc., and is followed by the words, "if shown by all the evidence in this case." The jury

were thus told to find from the evidence whether or not
the architect refused to deliver the certificate, and were not
directed to assume the non-delivery of such certificate as a
fact. (*Shannon* v. *Swanson,* 208 Ill. 52; *Chicago City
Railway Co.* v. *O'Donnell,* 208 id. 267; *Smith* v. *Henline,*
174 id. 184; *Illinois Terminal Railroad Co.* v. *Thompson,*
210 id. 226; *Gerke* v. *Fancher,* 158 id. 375). In addition
to this, in instruction, numbered 12 and other instructions
given for appellant, the jury were told that the burden of
proving the refusal to issue a final certificate was upon the
appellees, and that appellees must prove such refusal by a
preponderance of the evidence. In one instruction they were
told: "If you believe from the evidence in this case that
the plaintiffs have failed to prove by the preponderance or
greater weight of the evidence that the architect, Clinton J.
Warren, fraudulently and in collusion with the defendant
Fitzgerald, refused to issue a final certificate to the plaintiffs,
then your verdict should be for the defendant." Instruc-
tion, numbered 17, is also objected to upon the ground that
it told the jury that, if the plaintiffs completed the work in
accordance with the terms of the contract, then they could
recover without any reference to the fraud of the architect,
it being the contention of the appellant that the contract
makes the architect the final arbiter of all disputes between
the parties, so that his decision is conclusive, and no re-
covery could be had without showing fraud on his part.
Whether or not the contract between the parties made War-
ren, the architect, arbitrator of all disputes and questions
of payment of money due under the contract, is a question
which we do not deem it necessary to decide, because, even
if appellant's contention upon this subject is correct, at least
four instructions, given for the appellant, announced the
construction of the contract contended for. For instance,
instruction numbered 10, given for the appellant—after pre-
senting to the jury the questions whether or not appellees
completed the work in accordance with their contract, and

219—32

whether or not a dispute arose as to such completion, and whether or not the architect in good faith decided that appellees had failed to complete the contract within the time specified, so that there was no money due from appellant to appellees for the work—told the jury "that it makes no difference whether said Clinton J. Warren decided said disputes correctly or not; because, under the contract offered in evidence in this case, both parties herein agreed that the decision of said architect, when honestly made, should be final and binding upon the parties hereto. What the facts are you must determine from the evidence."

Instruction, numbered 17, is further criticised upon the alleged ground that it ignores the defense of the appellant, which defense is that the liquidated damages for the appellant amounted to more than the entire claim of the appellees, computed at the rate of $50.00 a day for the total period of delay. On this point counsel for the appellant say: "The appellees were in default from September 29, 1892, until February 15, 1893, being a delay in all of one hundred and thirty-nine days, and the liquidated damages for the delays under the terms of the contract amounted to $6950.00. Now, the total amount of the appellees' claim was only $6408.63, so if the testimony of the defendants' witnesses was true, even if the contract was completed in accordance with the terms thereof, there was nothing due to the appellees." The instruction was not erroneous in omitting the question of damages by way of set-off, as it is not always necessary to negative mere matter of defense. The instruction does not assume to enumerate all, or any of, the elements, essential to a recovery by the appellees. It simply relates to the question of excuse for the non-production of the architect's certificate. (*Illinois Central Railroad Co.* v. *Smith*, 208 Ill. 608). An instruction, containing all the elements necessary to a recovery upon the plaintiffs' theory, is sufficient without negativing defensive matter or theories. (*Chicago Union Traction Co.* v. *Leach*, 215 Ill. 184; *Mt. Olive Coal Co.* v.

*Rademacher,* 190 id. 538.)    The plaintiff is only obliged to present the law correctly in his instructions applicable to his theory of the case, and is not bound in every instruction to anticipate and exclude every possible defense.    It is not necessary in an instruction to negative matter of mere defense.    (*City of Chicago* v. *Lonergan,* 196 Ill. 518).    Moreover, instruction, numbered 15 given for the appellant, informed the jury that a certain time was fixed in the contract for the completion of the iron work by the appellees, and it was stated therein that, if the appellees failed to complete the iron work within the time specified, the appellees would be liable for the sum of $50.00 per day liquidated damages for each and every day the iron work remained unfinished after the time therein specified.    Instruction, numbered 14 given for the appellant, told the jury that, if they found the amount of damages, so sustained by the appellant by reason of the failure of plaintiffs to perform the work within the contract time exceeded the amount claimed by appellees, they were to find the issues for the defendant.

Objection is also made to instruction numbered 18, as set forth in the statement preceding this opinion.    This instruction is said to be erroneous upon the alleged ground that it told the jury that, if the architect refused to deliver to the appellees a final certificate "in bad faith and without just cause," appellees were entitled to recover.    The instruction is charged with being defective, as not stating to the jury what facts constituted "bad faith and without just cause."    We think the instruction, taken as a whole, clearly informed the jury what facts, under the circumstances of this case, would amount to bad faith and the absence of just cause.    If the architect inspected the work and accepted it as being in compliance with the contract, and then refused to deliver the certificate, he was guilty of bad faith.    Objection is also made to instruction 19, given for the appellees and set forth in the statement preceding this opinion.    What has already been said in regard to the subject of interest answers

the objection, made to this instruction. The evidence tended to show an unreasonable and vexatious delay of payment, and it was for the jury to say whether that delay was occasioned by the fault of the appellant. The delay of the architect was the delay of the appellant, as the architect was to a certain extent the agent of the appellant, and, according to the testimony of the appellees, acted under the instructions of the appellant in refusing to deliver the certificate. The instruction is not justly subject to the criticism, that it leaves the jury to estimate the amount of damages according to their own individual notions of right and wrong, because it specifically refers them to the evidence under the instructions of the court. (*Springfield Consolidated Railway Co.* v. *Puntenney,* 200 Ill. 9).

It is also said that instruction No. 16, given for the appellees, as set forth in the statement preceding this opinion, is erroneous, because it told the jury "that the facts must be decided by the jury from the testimony, which is received in open court." The word, "testimony," is said to signify oral evidence only, and therefore excluded from the consideration of the jury the documentary evidence. Even if such be the correct meaning of the word "testimony," it could not have misled the jury in the present case, for the reason that the concluding sentence of the instruction directs the jury to "not consider anything but the evidence introduced before them, and the law as laid down in the instructions of this court." It is admitted that the word, "evidence," is broad enough to include the documentary, as well as the oral evidence.

*Third*—It is next urged by counsel for appellant, that improper remarks were made by the court, and by counsel for appellees, in the presence of the jury to the prejudice of the appellant.

Certain letters were introduced in evidence by the appellant, purporting to have been written by the architect to appellees, complaining of the delay in the progress of the

work. The letters thus introduced were stated by the architect, when he was upon the stand as a witness, to be the only letters or documents in his possession. Subsequently, a letter was produced, written by the appellees to the architect, and it was stated, on the part of the appellant, that such letter was in the possession of the architect when he had previously testified. It appears that the architect was not within reach after he had given his testimony, and after the omitted letter had thus been introduced. It is said by counsel for appellant that the court intimated to the jury that the architect, Warren, had willfully suppressed a letter that was in his possession while on the stand. In reference to this letter the court asked: "Was this in his possession when he was on the stand?" to which counsel for appellant answered, "Yes;" the court then said, "I would like to have him here." The remark of the court can only be construed to have meant that he would like to have the architect, Warren, present in court to explain his previous statement, that he had produced all the letters in his possession, when subsequently one was introduced, which was admitted to have been in his possession when he testified, but not then referred to. The remark of the court cannot be construed as a charge that the architect had willfully suppressed a letter in his possession, but merely expressed a desire to have him make an explanation in regard to the matter. We are not satisfied that any harm was done to appellant by this remark of the court, although such remark might well have been omitted.

The witness, Anderson, had testified, contradicting the appellant's witness that the work in question was completed in December, 1892, and also telling of the many days of bad weather, which he claimed to have made a minute of in a private memorandum book. Upon the cross-examination of the witness in regard to this matter by counsel for appellant, the following occurred:

"Q. Did you vote at the election in the year 1892? In the fall of 1892, in November? (Objection by plaintiff).

The court: "We will rule out politics in this case.

Mr. Tone: "It has something to do with the memory.

The court: "If he isn't right you can bring in the weather bureau man. (To which statement of the court the defendant by his counsel then and there duly excepted).

A. "I haven't got marked down whether I voted at the election in 1892 or not."

The remark of the court, which is objected to, is the following: "If he isn't right, you can bring in the weather bureau man." Counsel on cross-examination had asked witness numerous questions in regard to the condition of the weather during the progress of the work, and had been allowed wide latitude in such cross-examination as to the weather. The question, whether or not the witness voted at the election in 1892 was improper and immaterial, and the remark of the court merely prevented further examination in this improper and immaterial vein. We cannot see that any harm could have been done to the appellant by the remark of the court, inasmuch as a further continuation of the cross-examination in regard to the weather was wholly unnecessary, enough already having been drawn out upon that subject.

Some other objections are made to the action of the court and to the remarks of counsel, but after a careful examination of them, we are of the opinion that they are not of sufficient importance to justify us in reversing the present judgment. The trial as a whole seems to have been conducted fairly, so far as the court was concerned.

The judgment of the Appellate Court, affirming the judgment of the circuit court, is affirmed.

*Judgment affirmed.*