(No. 21509.—

DANIEL H. BAILEY, Defendant in Error, *vs.* ORVILLE E. BABCOCK *et al.* Plaintiffs in Error.

*Opinion filed April 22, 1933.*

ASHCRAFT & ASHCRAFT, (CARROLL J. LORD, of counsel,) for plaintiffs in error.

BARTHELL & RUNDALL, for defendant in error.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

Daniel H. Bailey brought an action of trover in the circuit court of Cook county against Orville E. Babcock, Joseph A. Rushton and seven other persons, partners, doing business by the name and style of Babcock, Rushton & Company. The defendants interposed the plea of the general

issue. The jury assessed the plaintiff's damages at $4300 and judgment was rendered upon the verdict. The defendants prosecuted an appeal to the Appellate Court for the First District and that court affirmed the judgment. A writ of *certiorari* was issued by this court and the record of the cause is submitted for a further review.

The plaintiffs in error are stock brokers and the defendant in error is an agency director of a life insurance company, and both have their offices in the city of Chicago. On Saturday, August 3, 1929, the defendant in error telephoned Theodore Lundborg, a representative of the plaintiffs in error, to buy one hundred shares of the capital stock of the Chicago Corporation at $67 per share. The order was not executed on that day. On the morning of the fifth of August, the next business day, the defendant in error inquired of Lundborg by telephone whether the shares of the Chicago Corporation had been purchased. The testimony concerning this conversation is in conflict. The defendant in error testified that upon being informed that the shares had not been bought, he instructed Lundborg to cancel the order and to buy instead two hundred shares of the capital stock of the Utility and Industrial Corporation; that these shares were purchased and the defendant in error was notified of the fact; that later on the same day, Lundborg told him over the telephone that the shares of the Chicago Corporation had been bought before his direction to the contrary was received and that it was therefore too late to effect a cancellation of that order. Lundborg testified that he told the defendant in error he did not believe the shares of the Chicago Corporation had been purchased because the board disclosed a sale at $69 per share, which exceeded the price fixed by the defendant in error, and that the order to buy the stock of the Utility and Industrial Corporation was not conditioned upon the cancellation of the order to purchase the shares of the Chicago Corporation. On August 6, the defendant in error received by mail confirmations of the

purchase of two hundred shares of the Utility and Industrial Corporation and of the cancellation of the order to purchase one hundred shares of the Chicago Corporation.

Conferences between the defendant in error, one of the plaintiffs in error and Lundborg followed the conversation over the telephone. In these conferences the defendant in error insisted that his purchase of the shares of the Utility and Industrial Corporation was made dependent upon the cancellation of the earlier order and he expressed his desire to retain the stock of the Utility and Industrial Corporation but not the shares of the Chicago Corporation. The plaintiffs in error, on the contrary, insisted that he consummate both orders and discharge his indebtedness to them therefor. Subsequently, on March 5, 1930, the defendant in error tendered the sum owing for the two hundred shares of the Utility and Industrial Corporation stock and demanded the delivery to him of the certificates evidencing the ownership of these shares. The tender and demand were refused. The plaintiffs in error insisted that, pursuant to the order of the defendant in error, they had bought the shares of the Chicago Corporation for him and that they had the right to retain the shares of the Utility and Industrial Corporation until he had paid the sum owing to them for both stocks. Claiming a conversion of the shares of the latter stock, the defendant in error instituted this suit.

The principal contentions by which the plaintiffs in error seek a reversal of the judgment are that the circuit court excluded competent evidence of their efforts to cancel the order to buy the shares of the Chicago Corporation stock; that the court, in the jury's presence, expressed an opinion prejudicial to them upon a controverted question of fact, and that the court erroneously refused two instructions which they requested.

The testimony respecting the telephonic conversation between the defendant in error and Lundborg on the morning

of August 5, 1929, gave rise to conflicting theories respecting the rights and obligations of the respective parties. It was the theory of the plaintiffs in error that the order to buy the shares of the Utility and Industrial Corporation was not conditioned upon the cancellation of the order to buy the shares of the Chicago Corporation. Upon that theory the plaintiffs in error had the right to show by competent evidence that they received the order to cancel too late to be made effective by the exercise of diligence on their part. (*Fitzgerald* v. *Benner,* 219 Ill. 485; *Hoffman* v. *Chicago Title and Trust Co.* 198 id. 452; *Matzenbaugh* v. *People,* 194 id. 108). They also had the right to show that the written notice of the cancellation of the order to buy the stock of the Chicago Corporation, mailed to the defendant in error on the fifth of August, was sent by mistake. (*Carr* v. *Miner,* 42 Ill. 179; *Reading* v. *Traver,* 83 id. 372; *Starkweather* v. *Maginnis,* 196 id. 274; *Downer, Childs & Woods* v. *Sackett,* 251 Pa. 524). Proof that the admission made by sending the notice confirming the cancellation of the first order occurred through mistake would justify the rejection of the admission. *Friedman & Co.* v. *Newman,* 255 N. Y. 340.

For the foregoing purposes, the plaintiffs in error called as witnesses persons employed by themselves, by the Chicago Stock Exchange and by another brokerage house, all of whom had a part in the execution or cancellation of orders placed by customers of the plaintiffs in error. Certain of these witnesses were asked questions tending to prove facts which would show that it was impossible for the plaintiffs in error to make the cancellation of the order to buy the shares of the Chicago Corporation effective before that order was actually executed. Other questions were asked to show how a clerk, through an oversight, mailed the notice of cancellation to the defendant in error on the evening of the fifth of August. Objections to these questions were interposed by the defendant in error and the objections were

sustained by the court. Such testimony was competent to establish the defense and the trial court erred in excluding it.

In the course of the direct examination of a clerk employed by a brokerage house from which the plaintiffs in error bought the shares of the Chicago Corporation, certain offers of evidence were made to show that the order to purchase those shares was executed before its cancellation could be effected. The court observed, "You don't think you are going to show that by a clerk in somebody else's office, do you?" The counsel for the plaintiffs in error answered, "I think that is the best evidence that that trade was executed and when it was executed. Here is a man that was right on the floor and got the document at the time." The court replied, "I think that is immaterial. The basis of it is when it was given and when it was canceled, not when it was executed. If they gave it one day and they handled it two or three weeks after, that is their business." Counsel for the plaintiffs in error then asked, "Does your honor hold that whether the cancellation could be or could not be effective is immaterial in this case?" The court answered, "I think in view of the circumstances it is. Whether it can or not is a self-serving declaration. You served a written notice as well as a verbal notice that it was canceled, and they are in evidence. They can't excuse themselves now by coming back afterwards and saying that they couldn't do it." An exception was preserved to the court's statements and a motion was made to withdraw a juror. The motion was denied. It was for the jury to decide, after hearing all the evidence, whether a sufficient opportunity to cancel the order to buy the shares of the Chicago Corporation had been afforded before the purchase was actually made. The remarks of the court tended to preclude the jury's consideration of that question and to determine it adversely to the plaintiffs in error. Their complaint that the court's remarks were necessarily prejudicial must therefore be sustained. *People* v. *Lurie*, 276 Ill. 630;

*Illinois Central Railroad Co.* v. *Souders,* 178 id. 585; *Andreas* v. *Ketcham,* 77 id. 377.

The first of the two refused instructions reads: "The court further instructs the jury that if you believe from all the evidence in this case that plaintiff assented to the purchase of any stocks or securities by defendants for plaintiff's account, then you are instructed that plaintiff is liable to defendants for the amount of the purchase price of such stocks or securities so purchased, if any, even though such stocks or securities were purchased without a previous order from plaintiff to defendants or after plaintiff had given defendants or their agents, instructions to cancel such orders, if any, previously given, and even though defendants, by the exercise of reasonable skill and diligence, could have made effective any cancellation order previously given by plaintiff to defendants or defendants' agents." The evidence shows no purchase of shares of stock for the defendant in error without a previous order from him. The instruction was not only not based on the evidence but was to some extent contrary to it and was properly refused.

The second refused instruction informed the jury that if they believed from all the evidence in the case that in the usual and customary method of transacting business on the Chicago Stock Exchange, it was impossible for the defendants and their agents to cancel a previously given order to buy before the purchase was made, then the plaintiff would be liable to the defendants for the purchase price of the shares of stock purchased upon such order. A customer is bound by the prevailing customs, usages and rules of the stock exchange of which the brokers are members. A cancellation order to be effective must be communicated to the broker in time to stop the execution of the order. (Meyer on the Law of Stock Brokers and Stock Exchanges, pp. 159, 274). The defense was that the plaintiffs in error had not been afforded a reasonable opportunity to cancel the order to buy the shares of the Chicago Corporation. The instruc-

tion merely informed the jury that if it was impossible for the plaintiffs in error, in the usual and customary method of transacting business upon the stock exchange, to make effective the cancellation of the order to purchase, then the defendant in error would be liable for the price of the shares bought pursuant to such order. Upon the theory of the defense interposed, the instruction was proper and should have been given.

The judgments of the Appellate and circuit courts are reversed and the cause is remanded to the circuit court for another trial.

*Reversed and remanded.*