Richard A. Lange, Plaintiff-Appellee, v. Coca-Cola Bottling Company of Chicago, Inc., Defendant-Appellant.

Gen. No. 52,967.

First District, First Division.

January 13, 1969.

Rehearing denied February 6, 1969.

100

Hinshaw, Culbertson, Moelmann & Hoban, of Chicago (John L. Kirkland and D. Kendall Griffith, of counsel), for appellant.

Powers McGuire, of Chicago (Francis X. Riley and Murray McGuire, of counsel), for appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

This is an appeal from a summary judgment in favor of the plaintiff on the issue of liability in an automobile collision involving an automobile driven by plaintiff and a truck operated by defendant's employee. The defendant also appeals from the judgment entered on the jury's verdict of $90,000 in favor of the plaintiff. No questions are raised on the pleadings.

Two lawsuits were commenced as a result of the collision of a truck owned by defendant, Coca-Cola, with an automobile operated by plaintiff, Richard A. Lange. Coca-Cola sued Lange for property damage to its truck and Lange sued Coca-Cola for personal injuries and for property damage to his automobile. The two causes were not consolidated for trial. Coca-Cola's suit against Lange was tried without a jury and resulted in a judgment of not guilty in favor of Lange. This judgment was affirmed on appeal. When Lange's suit against Coca-Cola was called for trial Lange moved for summary judgment on the issue of liability on the ground that this issue had been determined in Coca-Cola's property damage suit and was binding on the parties in Lange's action for personal injuries. The trial court granted the motion and entered judgment in favor of Lange against Coca-Cola on the issue of liability.

The opinion handed down by the Appellate Court in Coca-Cola Bottling Company of Chicago, Inc. v. Lange, 80 Ill App2d 100, 224 NE2d 628 (abstract), the property damage action brought by Coca-Cola against Lange, reveals the following occurred:

> "In the late afternoon of March 7, 1962, . . . [Coca-Cola's] truck was travelling in an eastward direction on Huntley Road . . . in Algonquin, Illinois . . . . [Lange] was driving his auto in the opposite direction on the same road. It was snowing

at that time and the surface of the road was completely covered. . . .

". . . [Lange] said that: he was travelling at a rate of speed of from 15 to 20 miles per hour; it was snowing and the visibility was very poor; there had been an accumulation of snow for the last week or so; he was driving as close to the snowbank on his right as he could; he was unable to say whether or not he was over the center line because the road was completely covered with snow; the driver's door of his car was hit by the side of the truck; the door was completely demolished; the front of the car was not damaged; he did not remember anything after the impact, and someone took him to a hospital.

"The driver of . . . [Coca-Cola's] truck testified that: he was driving about 20 miles per hour and was in his proper lane; when he noticed . . . [Lange's] car coming toward him he veered his truck to the right, but that . . . [Lange's] auto struck him at a time when . . . [Lange's] car was about 4 or 5 feet into the eastbound lane; the road was covered with snow so he could not see the center line; the truck was damaged on the left side; . . . [Lange's] auto was damaged on the left-front side, and that the truck came to a stop facing in a southeasterly direction."

It is the contention of the defendant Coca-Cola that plaintiff was not entitled to a summary judgment on the issue of liability. It is argued that a suit for injury to the person and a separate suit for damage to property are two distinct causes of action even where the injury and damage were caused by the same negligent act. The defendant stresses that because the suit by Coca-Cola against Lange and Lange's action against Coca-Cola involve separate causes of action, res judicata is not involved. Instead, estoppel by verdict applies. However,

before this latter doctrine may be used, the defendant maintains, the controlling issue material to the determination of both causes must have been raised and determined in the former litigation. The defendant points out that there were no specific findings in the prior suit and in the absence of such findings it does not conclusively appear that the mutual issues of fact in the two law suits were decided in Lange's favor.

In Smith v. Bishop, 26 Ill2d 434, 187 NE2d 217, relied on heavily by the defendant, the Supreme Court laid down the following general rules as to when the doctrine of estoppel by verdict applies:

> "When the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted upon the determination of which the finding or verdict was rendered. Where some controlling fact or question material to the determination of both causes had been adjudicated in the former suit by a court of competent jurisdiction and the same fact or question is again at issue between the same parties, its adjudication in the first cause will, if properly presented, be conclusive of the same question in the later suit, irrespective of the question whether the cause of action is the same in both suits or not. . . . [W]here the subsequent litigation is upon a different claim or cause of action, the determination is not conclusive unless the precise question in controversy had been raised and determined in the former litigation."

26 Ill2d 434, 436-37, 187 NE2d 217. In the Smith case the Supreme Court reversed a summary judgment holding that there was no identity of parties and therefore, the doctrine of estoppel by verdict did not apply.

In support of his motion for summary judgment, Lange's attorney filed a verified affidavit which stated

that the lawsuit arose out of a collision; that the sole question to be decided in the lawsuit was which party crossed the center line of Huntley Road; and that the two lawsuits involved the same questions of fact with the sole exception being the amount of damage sustained by the respective parties. No counteraffidavit was filed by Coca-Cola.

It is undisputed that the parties to both lawsuits are identical and that the same occurrence is involved in both. The defendant argues, however, that in its suit against Lange, it had the burden of proving: (1) it was free of contributory negligence; (2) Lange was negligent; (3) Coca-Cola's truck was damaged; and (4) Lange's negligence was the proximate cause of that damage. If Coca-Cola failed to prove any one of these issues the judgment would have to be in favor of Lange. In his suit against Coca-Cola Lange has the burden of proving: (1) Lange was free from contributory negligence; (2) Coca-Cola was guilty of negligence; (3) Lange was injured; and (4) Coca-Cola's negligence was the proximate cause of those injuries. Consequently the defendant says that if the judgment in Coca-Cola's property damage suit was based on Coca-Cola's failure to prove either that its truck was damaged or that Lange's negligence was the proximate cause of that damage, then the judgment in favor of Lange would not be determinative of any of the issues involved in Lange's suit against Coca-Cola. Also, in the prior property damage action, Lange could have been found guilty of negligence and still have had judgment in his favor if Coca-Cola was also found negligent.

■ ■ Both lawsuits were filed in 1962. Lange's action was filed in the Circuit Court and Coca-Cola's was filed in the Municipal Division of the Circuit Court. The parties proceeded to trial in the Municipal Division on Coca-Cola's lawsuit without consolidating the two causes. The controlling fact or question in both of these cases is which of the two parties crossed the center line of Hunt-

ley Road. This question of fact, in our opinion, has been adjudicated in the earlier trial involving damage to Coca-Cola's truck. As stated in Smith v. Bishop, 26 Ill2d 434, 187 NE2d 217, where the adjudication in the first cause is properly presented it is conclusive of the same question in the later suit and is an absolute bar to relitigating that question. In our judgment, whether the defendant or the plaintiff was at fault in the case at bar, has been fully litigated and adjudicated in the prior suit and the defendant in this cause should not be permitted to relitigate the matters there decided. The summary judgment of the Circuit Court in favor of the plaintiff on the issue of liability is, therefore, affirmed.

We now consider whether trial errors occurred which were so prejudicial to the defendant that a new trial on the issue of damages is required. We turn first to the contention that the defendant was irreparably prejudiced by the unresponsive answers of a doctor. The record shows that Dr. Donald Atlas was called by the plaintiff. He was qualified as a specialist in internal medicine and testified that he was a consulting internist and cardiologist. He examined plaintiff for the first time shortly before he testified. He stated that the plaintiff's heart was of normal size, but that a systolic murmur was audible. From his examination of an electrocardiogram taken of the plaintiff, he testified that it showed continuous defects, which were evidence of heart damage, "and it shows an advanced degree of heart disease." His diagnosis was that the plaintiff was afflicted with or suffering from an advanced degree of heart disease, "myocardial insufficiency."

After many other questions, Dr. Atlas was given a hypothetical question. He answered that in his opinion there might and could be a causal connection between the accident as described and the condition of ill-being described in the question. He said he based his opinion on the precise diagnosis of the kind of heart attack plaintiff

106

had within a few hours after the accident. He stated that, in his opinion, the condition was permanent and that the plaintiff would need medical treatment for the rest of his life. He was then asked: "Doctor, again assuming the same hypothesis and based upon a reasonable degree of medical certainty and from a medical and surgical point of view, have you an opinion as to a prognosis." The following took place in the presence of the jury.

"A. Yes, I have an opinion as to the prognosis.

"Q. And what is that opinion.

"A. I'm reluctant to give the opinion with the wife in the room."

Mr. McGuire (plaintiff's attorney) "Will you step out of the room?" (Mrs. Ella Lange left the courtroom.)

Mr. Kirkland (defendant's attorney) "I object to that answer."

The Court: "No, I think he has qualified himself as able to give a prognosis."

The Witness: "May I answer?"

The Court: "Yes, you may now."

The Witness: "A. The prognosis is extremely bad. I think this man's life expectancy is very short and the more I'm in practice, the less I can give an estimate in months or years but I'd estimate that it would be less than two or three years."

Mr. Kirkland: "I move to strike the answer as based on conjecture and"—

The Court: "Yes, yes, I realize by virtue of your training and experience and all, this is your opinion"—

The Witness: "Yes."

The Court: "But the Good Lord has something to do with that."

The Witness: "Right, right. That's why I'm reluctant to say. I've been wrong so many times."

Mr. Kirkland: "Is the answer stricken?"

The Court: "Yes, it is stricken."

Mr. Kirkland: "Will the jury be instructed to disregard the answer, your honor?"

The Court: "The jury will disregard the Doctor's answer as to the predicted length of time that this man may live."

 We agree with the defendant that the remark by Dr. Atlas that he was reluctant to give an opinion with the plaintiff's wife in the courtroom and the withdrawal of the wife from the room caused the defendant irreparable prejudice even though the answer was stricken and the jury told to disregard it. The episode improperly emphasized the Doctor's prognosis. We do not think the impact of this improper conduct by a specialist in the presence of the jury could possibly be erased from the minds of the jurors, even though the answer was stricken. Consideration by the jury as to whether or not there was a causal connection between the accident and the plaintiff's heart condition should not be influenced by such conduct by witnesses and attorneys. In a close question such as the one in the present case it is of the utmost importance that jury not be inflamed or improperly influenced.

 The aforementioned error was further compounded during argument to the jury by plaintiff's counsel. He began his argument by saying:

"But in any event you may wonder where are the Langes at in a crucial stage in this case, and the answer to that is this—I don't have eyes watering in my nerves. Dr. Atlas preferred to have Mr. & Mrs. Lange out of the courtroom. So do I prefer to have these people not to be here this morning. So I took the liberty of calling the Langes last night and told them something unexpected came up that the court wouldn't start until about 2:30 this afternoon. So

108

they would have plenty of time to hop on that 1:05 train."

This argument was unwarranted particularly in view of the fact that the Doctor's estimated statement that plaintiff's life expectancy was short, less than two or three years, was stricken and was not in evidence. This statement could only be made to appeal to the sympathy of the jury and create passion and prejudice against the defendant. Plaintiff argues, however, that no objection was made to this argument at the time of trial. As stated in Belfield v. Coop, 8 Ill2d 293, 313, 134 NE2d 249:

> "If prejudicial arguments are made without objection of counsel or interference of the trial court to the extent that the parties litigant cannot receive a fair trial and the judicial process stand without deterioration, then upon review this court may consider such assignments of error, even though no objection was made and no ruling made or preserved thereon."

It is understandable why defendant's counsel hesitated to raise an objection to the content of the argument in the presence of the jury. Such an objection would only have served to emphasize the improper argument and further prejudice the defendant.

We believe the foregoing errors to be sufficiently substantial and prejudicial to defendant's case to warrant a new trial. We have made no comment regarding other improper arguments made to the jury by plaintiff's lawyer, but assume they will not recur. However, since this cause must be tried again, we deem it necessary to consider other errors raised by the defendant.

■ The defendant complains that the hypothetical question propounded to Dr. Atlas omitted material facts. The record reveals that plaintiff's father died of a heart attack at the age of 55 and that his mother had heart trouble after she was 70. Dr. Atlas testified that one of

the factors contributing to coronary heart disease was heredity. He also testified that plaintiff weighed 180 pounds, that plaintiff's height was five feet, eight inches, and that another factor contributing to coronary heart disease was obesity. The hypothetical question should have included the fact that both of the plaintiff's parents had heart trouble and although it included the plaintiff's weight, it should also have referred to the plaintiff's height. The objection to the omission of these facts was improperly overruled. Where the evidence is undisputed, as is the situation here, the hypothetical question must contain all of the facts and must not ignore those material facts which would affect the opinion of the expert witness. Sanitary Dist. v. Industrial Commission, 343 Ill 236, 243, 175 NE2d 372.

██ ██ The defendant also raises as error that the court improperly informed the jury of the weight he gave certain evidence. During the objection to the aforementioned hypothetical question the following took place in the presence of the jury:

> Mr. Kirkland: "And the father and mother of the plaintiff had both had heart trouble."
> The Court: "I didn't even give that elementary consideration."
> Mr. Kirkland: "I understand this Doctor to testify that one of the first things that are important is heredity."
> The Court: "That's his opinion. That is his opinion. I don't believe that at all."

It is axiomatic that it is the jury's function to weigh the evidence and the verdict must not be based on the opinion of the judge to the prejudice of either litigant. Bailey v. Babcock, 352 Ill 231, 235, 185 NE 602. It was error for the court to make this remark which indicated his opinion on a material fact in issue. Illinois Cent. R. Co. v. Souders, 178 Ill 585, 592–93, 53 NE 408.

■■ There is no precise rule by which an award of damages can be fixed in an action for personal injuries. Each case is to be determined on its own particular facts. The goal of an award for damages is fair and reasonable compensation. It cannot be said that the aforementioned errors could not have added to plaintiff's damages. It is the province and duty of the courts to see that every litigant has a fair trial. In the instant case, where the issue of personal injuries was a close question, the incidents enumerated had a prejudicial effect on the jury which cannot be measured. We, therefore, hold that in the interest of justice the matter of damages must be retried.

For the reasons stated the summary judgment on the issue of liability is affirmed. The judgment in the amount of $90,000 in favor of plaintiff for his personal injuries is reversed and remanded for a trial on the issue of damages only.

Affirmed in part and reversed and remanded in part.

ADESKO, P. J. and MURPHY, J., concur.