## William Fitzgerald v. Mathias Benner, et al.

### Gen. No. 11,918.

1. VERDICT—*when not disturbed.* A verdict will not be set aside on appeal as against the preponderance of the evidence unless such preponderance is so clear and decided as to leave no substantial doubt in the minds of the court.

2. "TESTIMONY"—*use of, instead of " evidence," held not reversible error.* The use of the word " testimony " instead of " evidence," while technically inaccurate in a case where documentary proof was interposed, does not constitute reversible error where it is clear from all of the instructions that it was not intended to exclude from the consideration of the jury the documentary proof so in evidence.

3. ARCHITECT'S CERTIFICATE—*when not essential to recovery.* An architect's certificate made by a building contract a prerequisite to payment, is not essential to recovery where it is shown that it was withheld in bad faith.

4. INTEREST—*when error in instruction upon, will not be considered.* An alleged error in an instruction upon this subject authorizing interest, will not be considered if it appears from the entire record that the jury could not have included interest in the verdict rendered.

5. HEARSAY EVIDENCE—*when admission of, not reversible error.* The admission of hearsay evidence, not of a prejudicial character, is not ground for reversal.

6. REMARKS OF TRIAL COURT—*when not prejudicial.* Held, that it was not prejudicial for the court to say that he would like to have a witness present who had gone away and left with counsel a letter which was produced in evidence, and to say in relation to the testimony of a witness as to the weather, when such testimony seemed to be doubted, " If he is not right, you can bring in the weather bureau man."

7. ARCHITECT—*question as to when, official arbiter of damages.* The Appellate Court, in this case, referring to a contract under which it was contended that the architect was the final arbiter of the damages for delay, expressed a decided doubt as to whether such was the case.

Action of assumpsit. Appeal from the Circuit Court of Cook County; the Hon. JOHN GIBBONS, Judge, presiding. Heard in this court at the October term, 1904. Affirmed. Opinion filed May 1, 1905.

DAVID K. TONE and WILLIAM H. FITZGERALD, for appellant.

WILLIAM A. DOYLE, for appellees.

MR. JUSTICE BROWN delivered the opinion of the court.

This appeal is from a judgment in favor of appellees against appellant in the Circuit Court of Cook County for $6,000. The judgment was upon a verdict of a jury for that amount in an action of assumpsit. The suit was upon a building contract between Fitzgerald on the one side and Benner and Kent on the other, by which Benner and Kent agreed to erect, build and complete the iron work for a flat building to belong to Fitzgerald, to be erected at the corner of 26th and State streets in Chicago. The price to be paid by Fitzgerald to Benner and Kent was fixed by the contract at a certain sum for castings a ton, another for beams per ton, and at other sums per pound for punching, copying and riveting, and for anchors, steel plates, stirrups and straps. A certain sum was also named as the price per square foot for Hyatt lights.

The contract was dated August 22, 1892. Between that date and May 27, 1893, material and labor, which at the prices named would amount to $22,908.63, were furnished by the appellees, Benner and Kent. November 23, 1892, $5,000 was paid them, December 17, 1892, $5,000, and February 21, 1893, $6,500, leaving, according to the contention of the appellees, $6,408.63 due.

It is not denied by the appellant that the labor and material claimed to have been furnished by the appellees were so furnished, but it is contended by him that the appellees have, under their contract, no claim against the appellant for any amount, unless the architect named in the contract has so certified, and that the architect refused so to certify as to this balance claimed, or any part thereof; that the architect was the ultimate and sole arbitrator of any dispute between the parties to the contract, and has decided in good faith that the appellant owes the appellees nothing, and therefore the appellees should have recovered nothing in this suit. Further appellant contends that without reference to the lack of the architect's certificate, the verdict is excessive because it is shown by the preponderance of the evidence that there are due from the appellees

to appellant liquidated damages for delay stipulated for in the contract, to an amount which must in any event reduce the claim of the appellees under the contract to a sum much less than the verdict and judgment against him, if it does not obliterate it.    To this deduction of stipulated damages for delay should be added another, it is claimed, for twenty defective columns furnished by appellees and condemned by the architect, but not removed or replaced, and the two deductions together, it is urged, even if the smallest sum for which there is ground in the evidence is allowed for the damages for delay, justify the refusal of a certificate by the architect and demonstrate the injustice of any judgment against the appellant.

It appears that these questions were submitted to the jury by the trial court under instructions concerning them asked by the appellant and given by the court, that were, as will be hereinafter noted, even more favorable to the appellant than seems to us justifiable.

The jury were by the instructions told that the fact that appellant has occupied since November 1, 1893, the building in question, does not prove that he accepted the work of the appellees or conceded that it was properly performed, and that if a dispute arose between the appellant and appellees as to whether appellees had completed the iron work specified in said contract, within the time specified in said contract, and the jury believed from the evidence that the architect honestly and in good faith decided that appellees had failed so to complete the contract, and that by reason of said fact there was no money owing to the appellees by the appellant, then the verdict must be for the appellant, whether the architect decided correctly or not; because, under the contract, both parties had agreed that the decision of the architect when honestly made should be final and binding upon the parties. In various forms the jury were instructed that it was the duty of the architect, Warren, to decide whether the appellees had completed the iron work within the time specified, and if not, what damages at the rate of $50 per day, as

stipulated in the contract, were due to the appellant for such delay; and that if Warren had honestly and in good faith decided that because of such damages or because the appellees had failed to complete the work in accordance with the contract and specifications, no money was due to the appellees, the decision was binding and the jury must give it effect by finding for the defendant.

Further, the jury were instructed that, if they believed from the evidence that the appellees had failed to prove by the preponderance of the evidence that the architect, Warren, fraudulently, and in collusion with the appellant refused to issue a final certificate to the appellees, that their verdict should be for the appellant.

There was conflicting evidence before the jury as to whether the appellees were guilty of any delay, not the result of "causes beyond their control," namely, "the delays of other contractors and rainy weather."

There was conflicting evidence as to whether any complaint was made of the character of certain columns furnished by appellees, and there was a very distinct and irreconcilable clash of testimony in reference to the conversations and transactions from which the want of good faith on the part of the architect was to be inferred or negatived.

Under these circumstances, it is not for us to pass on the relative credibility of witnesses, no one of whom is impeached, and unless there is such a clear and decided preponderance of evidence as to leave no substantial doubt in our minds—such a preponderance as does not appear in this record—we ought not to disturb the verdict of the jury or hold that the assignments of error which depend on the inconsistency of such verdict with the weight of the evidence, are well taken.

We are confined, therefore, in this case, to the consideration of the alleged errors in the trial below which resulted in the verdict in question.

It is claimed by appellant that there are such errors, (a) in the giving of each of the four instructions, which were

Fitzgerald v. Benner.

asked by the appellees and which are numbered 16, 17, 18 and 19; (b)· in the admission and exclusion of evidence; and (c) in improper remarks made by the trial judge and by appellees' counsel without the interference of the court.

Instruction 16 is this:

"The court instructs the jury that in this case he has not expressed, and does not in any of these instructions express, any opinion on the facts of the case, nor upon the credibility or want of credibility of any witness.   The facts must be decided by the jury from the testimony which is received in open court.   Offered testimony to which objection was sustained, or which was stricken out by order of the court, is not before the jury and should not be considered in arriving at your verdict.   Statements of counsel for either side, if any, which are unsupported by the testimony, or which are irrelevant to this case, should not be considered.

The instructions given you by the court are to be considered as a series.

The court has not expressed an opinion on the facts and has not expressed an opinion on the credibility or character of any witness, and the court has no right to do so, and if the jury overheard anything said between the court and counsel in discussing questions of law or otherwise, the jury should not consider anything but the evidence introduced before them, and the law as laid down in the instructions of this court."

The complaint made of this instruction is that it is therein said that "the facts must be decided by the jury from the testimony which is received in open court," and that this direction excluded, or might by the jury have been supposed to exclude, from their consideration, all the documentary evidence introduced in the cause.

The instruction was undoubtedly technically inaccurate in the use of the word "testimony" instead of "evidence," but we do not think there is the slightest possibility of the jury having been misled by it.   The case had been hotly contested; controversies had occurred in the hearing of the jury respecting the introduction of documentary evidence; almost every other instruction in the whole series had specifically called the attention of the jury to their duty to

determine the questions at issue from the evidence, and this very instruction complained of closed by telling them that they "should not consider anything but the *evidence* introduced before them and the law as laid down in the instructions of the court."

We do not think this judgment should be reversed for the inaccuracy noted.

Instruction 17 is as follows:

"If you believe from the evidence and the instructions of the court that the architect or superintendent named in the contract in this case accepted the work performed by the plaintiffs as the work progressed, as required by the contract, and if you further find from the evidence that such contract was completed in accordance with the terms thereof, and you further believe from the evidence that after the contract was completed the architect accepted the work performed by the plaintiffs, and if you further believe from the evidence and instructions of the court that the architect withheld or refused to deliver to the plaintiffs his statement or certificate in writing showing the amount due the plaintiffs, if anything, either because the defendant, the owner, directed him, the said architect, to withhold or not to deliver the same, or for any other reason not in accordance with the terms of the contract between said parties if shown by all the evidence in this case, then you are instructed if you find such facts proven from the evidence, that the plaintiffs would not be bound to produce such certificates before they were entitled to recover in this case."

This instruction is vigorously attacked by appellant. It is said to assume "the important and closely disputed proposition of fact" that "the owner directed" the architect "to withhold or not to deliver" his certificate. Although this contention is strenuously pressed and numerous cases in this court and in the Supreme Court are brought to our attention where, as it is urged by appellant, a similar construction has been given to similar words, we are entirely unable to see that there is any such assumption in the instruction when its language is construed according to its natural and obvious meaning.

"If you further believe * * * that the architect withheld or refused to deliver to the plaintiffs his state-

ment or certificate in writing showing the amount due the plaintiffs, if anything, either because the defendant, the owner, directed him, the said architect, to withhold or not to deliver the same, or for any other reason not in accordance with the terms of the contract between said parties," means, according to the plain intent of the language, as it seems to us,

" If you believe that the owner directed the architect to withhold the certificate, and if you believe that for that reason the architect did so withhold it, or if you believe (without reference to question of the owner's directions) that the architect withheld the certificate for any reason not in accordance with the terms of the contract—"

To import an " assumption " into the language of this instruction such as the appellant insists is contained therein, is " to consider too curiously." We are very sure that the jury did no such thing.

The second objection made to the instruction is that it told the jury in effect that if the work was actually completed in accordance with the terms of the contract and the architect erroneously decided that it was not, then the jury should disregard the decision of the architect and find a verdict for the plaintiff, whereas the law is that as the contract makes the architect the final arbiter of all disputes between the parties, no recovery could be had without showing actual fraud on the part of the architect. This objection rests on the use of the words " or for any other reason not in accordance with the terms of the contract," as it is evident that if the architect were by the contract the final arbiter of all disputes concerning payments and refused to deliver the plaintiffs his certificate, because the owner told him not to deliver it, the action would be fraudulent.

But if the words quoted can be considered to indicate a merely erroneous decision by the architect against the claim of the appellees, and not a wilful and therefore fraudulent refusal to use his judgment as the contract requires, which we think is doubtful, and if the contract is to be properly held to make the architect a final umpire in all matters involving payments or damages under it, which we also think

doubtful, the language of this instruction, although it would be inaccurate and technically erroneous, yet could not be held to be dangerous or misleading to the jury or to constitute reversible error, in view of the distinct enunciation of the proposition in several instructions given at the request of the defendant that to excuse the production of the architect's certificate, the burden of proving bad faith and a fraudulent purpose on his part was upon the plaintiffs. The instructions must be regarded as a series and together, and the jury was so informed.

The other objections made by the appellant to this instruction we do not regard as important. The one most insisted on is that the instruction told the jury the plaintiffs were entitled to recover although the stipulated damages for delay might exceed the balance due on the contract. The instruction does not so declare. It purports to state only what would excuse the production of the architect's certificate—not all the elements, nor indeed any of them, essential to a recovery. It did not "direct a verdict for either party or amount to such a direction in case the jury should find certain facts" (Illinois Central R. R. Co. v. Smith, 208 Ill., 608), and viewed in connection with the preceding instructions—as it must be—we find in it nothing misleading or justifying a reversal.

Instruction No. 18 is:

"The court instructs the jury that if you believe from the evidence that the architect, Clinton J. Warren, in this case inspected the work in question and knew its character and quality, and that said architect accepted the work done and materials furnished by the plaintiffs as being in compliance with and in full performance of the contract on plaintiffs' part, and if you further believe from the evidence and under the instructions of the court that said contract was completed in accordance therewith, and you further believe from the said evidence that said architect in bad faith and without just cause refused to deliver to the plaintiffs a final certificate showing such acceptance and completion and the balance due the plaintiffs, if any, then the plaintiffs are entitled to recover whatever, if anything, the jury shall find from the evidence is due upon the contract."

We do not agree with appellant's contention that this instruction was erroneous. The ordinary construction of language applied to it relieves it from the objections urged against it. If the architect first, on full inspection of the work, adjudged it to be "in compliance with and full performance of the contract" (it actually being so), and then in bad faith refused to give the plaintiffs a certificate, certainly the plaintiffs were entitled, without such a certificate, to recover "whatever, if *anything*, was due on the contract." The instruction plainly enough means this and nothing more, and the objections made to it are hypercritical.

Instruction 19 is on the allowance of interest. We see no error in the instruction as given, and even if there were, we think it was proven not to be prejudicial to the appellant by the fact that it plainly enough appears from the record of the case before us that the jury allowed no interest and took neither the instruction nor the testimony concerning interest into account in determining the amount of their verdict. Counsel say that "this court has no right to assume that the jury returned a verdict for $6,000 principal and did not include in that any portion of the interest." We think that this depends on what the entire record shows concerning the pleadings, evidence and instructions before the jury, and that this court not only may have the right, but also the duty of determining what elements the jury apparently considered in their assessment of damages.

The case cited in appellant's argument, Hartford Deposit Co. v. Calkins, 186 Ill. 104, is not in point. Each case must depend on its own circumstances, and in the Hartford Deposit Co. case the Supreme Court says it is unable to see how the Appellate Court, "*under the facts of that case*," could assume that the error only affected the appellant to the amount of $1,000.

Under the facts of *this* case, we do not think that the instruction or the admission of evidence concerning interest was erroneous; nor, under the facts of this case, do we think that either affected the verdict of the jury.

Much stress is laid by appellant upon the alleged error of the trial court in refusing to strike out a portion of an answer made by the witness Anderson. The record shows the following question and answer and ruling:

"MR. DOYLE:   Q.   What was the condition, if you remember, of the piers in the basement at the end of September of that year, as to whether or not they were ready for the work—the iron work?

"MR. ANDERSON:  A.  Well, they commenced to be ready on, I should judge, a day or two before I started, because they were anxious to let me in there just as soon as I could get in, because there was lots of iron, and of course I was busy, and I asked every day, telephoned every day, ' Can't I start?' because I had a gang idle. I wanted to get at it, and they was kicking about the iron laying all over the street and they wanted to get me into it as quick as I could.

"MR. TONE:   I move to strike out ' that he telephoned every day;' they knew the condition.

"Motion denied by the court. To which ruling of the court the defendant by his counsel then and there duly excepted."

This hardly bears out the assertion of the appellant's argument that " counsel for appellant then moved to strike out the telephone conversation above detailed between Anderson and his principals out of the presence of appellant, which motion was denied by the court."

But even giving the incident and ruling that construction, we should find no reversible error therein. The question that the witness was asked was about the condition of the piers, and that he answered. The rest of his answer was irresponsive and might certainly have been stricken out without error by the court, on motion of defendant or of its own motion. But for the court to decline to do so, after the testimony had once been heard by the jury, was certainly not reversible error. The rest of the answer amounted to nothing. It was not "a conversation," but merely a statement to the jury of witness' own state of mind and actions, as connected with and confirming his recollection of the condition testified to. It does not even

Fitzgerald v. Benner.

appear who "they" were who were "kicking," and who "wanted to get witness into it." Not every erroneous admission nor every refusal to strike out hearsay evidence is ground for reversal. We are of the opinion that the statement that witness "telephoned every day"—it does not appear even to whom—"Can't I start?" could not by the remotest possibility have affected the verdict of the jury, and consequently that even if it had been admitted erroneously over objection, it should not reverse the judgment. But as above noted, it does not appear that any motion to strike out anything but the declaration that witness "telephoned every day" was made and denied.

We do not think appellant's claim of reversible error on account of the use of a memorandum book by the witness Anderson, is well taken. It does not appear by the record that he used it in his direct examination for any purpose except to refresh his memory. He answered in said direct examination certain questions as to what kind of memoranda he kept in his book, but this could not have been injurious or erroneous in itself. Thereupon, on cross-examination, appellant's counsel asked him to *look over his book* and tell how many days it rained during September and October, 1892. He was asked also by counsel for appellant to name such days and give all the days during said months that he was stopped from working by rain. After a very considerable cross-examination by counsel for appellant, on the subject of the book and its contents, the witness was interrogated by counsel for the appellees again, and was requested to give the condition of the weather in November and from December 1 to December 19, 1892. To this question counsel for defendant objected *as immaterial*, which objection was overruled. Then the redirect examination proceeded without further objection and was followed by a recross-examination concerning the same matter. We do not think that there is any merit under these circumstances in the contention of appellant in regard to this book.

There are no other alleged errors which we think merit any extended discussion.

That the trial judge did not strike out of Mr. Kent's
testimony the words " He " (meaning Mr. Warren) " kept
putting me off," that he used his discretion in limiting
an extended cross-examination directed to the credibility
or recollection of the witness, and that he at first rejected
evidence as to what passed between the architect, Warren,
and his employee Kearns, although afterward practically
admitting it all, certainly furnishes no ground for reversal.

We see no objection to any of the remarks of the trial
judge during the trial, as they appear in the record.

To say that he would like to have a witness present who
had gone away and left with counsel a letter which was
produced in evidence, and to say in relation to testimony of
a witness as to the weather when such testimony seemed
to be doubted, " If he is not right you can bring in the
weather bureau man," is not to discredit or lend credence
to either witness. Nor can we see how either remark
could prejudice the jury. One was the expression of a
perfectly natural and harmless wish, and does not neces-
sarily imply that there was any criticism made of the wit-
ness who had gone; and the other was the statement of an
undeniable truth, as far as possible from " practically tell-
ing the jury the witness on the stand should be believed by
them." The complaints concerning these remarks inject
into them meanings that we have no right to find there.

Undoubtedly during the trial heated language was used
by counsel, to which the appellant might rightly object.
But there is nothing which it can be seriously urged should
cause a reversal of this judgment.

Finding no reversible error in the record committed
against appellant, we should not be justified in disturbing
the verdict and judgment. We are not, therefore, called
upon to decide some other questions which are suggested
by our reading of the contract on which the suit is brought.
But it makes us the more willing to affirm this judgment
as in accord with substantial justice, that it is at least very
doubtful whether the instruction given at the request of
appellant, by which the jury were told that it was the

Fitzgerald v. Benner.

duty of the architect, Warren, to decide whether the plaint-
iffs had completed the iron work within the time specified
in said contract, and if not, then to decide the amount of
damages at $50 a day that defendant was entitled to be
allowed, and that his decision, whether right or wrong, was
conclusive—was not more favorable than it should have
been to the appellant.

The contract says that " damages for delay will be $50 a
day for each and every day the work remains unfinished
*after above date.*"    " The above date " is " at such time as
is set forth in the specifications."    The time set forth in
the specification is *blank.*    The specification says also that
" damages for delay will be $50 per day for each day the
work remains unfinished after *above date.*"    As indicated
the " above date " is represented by a blank.

It was an extreme ruling in favor of appellant which,
under these circumstances, gave to the architect the con-
clusive right to deduct from appellees' bill $50 a day as
liquidated damages for any delay whatever, and this *is*
not changed by the language of the contract itself under
the heading " Time."    That language seems to be ad-
mitted by appellees to constitute a provision that as to
completion of the skeleton structure a certain time was
specified, although by itself the paragraph makes no stipu-
lation, provision or engagement, but is a collection of
words without grammatical construction.

It was probably intended, however, as counsel treat it, as
an agreement as to the time by which various portions of
the structural work should be finished, but there is no
provision for liquidated damages of $50 a day in connection
with it.    The " above date " after which said damages
were to be charged, is clearly stated to be " the date set
forth in the specification," which is no date at all.

Nor are we satisfied that the contract gave the right to
the architect, Warren, to pass upon the damages for delay,
liquidated or otherwise.    The work is to be done according
to drawings and specifications made by him, the materials
and labor to be furnished under his direction and super-

vision. Improper material and work are to be removed when he so directs, and the appellant is only to pay, on the presentation of his certificates; fifteen per cent. is to be held back until the architect declares the contract completed.

Again, " should delay be caused by other contractors, a just and proper amount of extra time shall be allowed by the architect, provided," etc. "And in case the parties shall fail to agree as to the true value of extra or deducted work, or the amount of extra time, the decision of the architect shall be final and binding. *The same in case of any disagreement between the parties relating to the performance of any covenant or agreement herein contained.*" \* \* \* " Should any dispute arise respecting the true construction or meaning of the drawings or specifications, the same shall be decided by the architect, and his decision shall be final and conclusive."

We presume that it is the language we have italicized on which the appellant relies for the construction of the contract claimed by him and allowed by the court below, but although in the view we take of the case, we are not called on to decide the question, we think it more than doubtful whether this or any of the other language in the contract makes the architect a final arbiter of the damages for delay. The decisions of this court in Nelson v. Pickwick Associated Company, 30 Ill. App. 333, and Frost v. Rand, McNally & Co., 51 Ill. App. 276, are authorities committing us to the contrary view. The language there and here is very different from that in Fowler v. Deakman, 84 Ill. 130, where the architect was an arbitrator " to settle all disputes between the parties."

The judgment of the Circuit Court is affirmed.

*Affirmed.*