OKLAHOMA VANDERVERT, APPELLEE, V. FRANK A. ROBEY, APPELLANT.

FILED APRIL 19, 1929. No. 26577.

*Burkett, Wilson, Brown & Wilson* and *Albert S. Johnston,* for appellant.

*Stewart, Stewart & Whitworth, contra.*

Heard before GOSS, C. J., DEAN, EBERLY and DAY, JJ., and LIGHTNER and REDICK, District Judges.

DEAN, J.

This action was begun in the district court for Lancaster

county by Oklahoma Vandervert, a minor of 18 years, by Tina Vandervert, his mother and next friend, to recover $20,000 as damages for personal injuries sustained by him through the alleged negligence of Frank A. Robey, defendant. Throughout the record, and in the briefs of the parties, Oklahoma Vandervert is referred to as plaintiff and he will hereinafter be so designated. The Nebraska Material Company, hereinafter called the company, was joined as a party defendant on the ground, as alleged, that it had an interest or right of subrogation in such amount as plaintiff might recover to the extent of payments made to plaintiff by the company for compensation and medical services. This right of subrogation accrued under section 3041, Comp. St. 1922. The jury returned a verdict for $3,500, from which $870.50 was ordered deducted by the court and directed to be paid to the company because these payments were made by the company under the subrogation proposition. Defendant Robey alone appealed.

A brief summary of the material evidence submitted in support of the plaintiff's allegations follows. The accident happened June 5, 1927. Plaintiff was hauling sand at the time for the company in a large motor truck. He testified that his truck was moving at about the rate of 12 miles an hour shortly before noon when he saw the defendant backing his car out of his driveway on Twenty-Second street. Plaintiff honked his truck horn, but defendant continued to back his car out into the street. Thereupon plaintiff slackened his speed and honked and yelled in an attempt to attract defendant's attention. It appears that another car was parked so nearby that plaintiff did not have room to get by and it was therefore necessary for him to drive the truck over the curbing into the defendant's driveway to avoid a collision with his car. And, by so doing, the truck struck a tree and the left wheel was broken off.

Plaintiff testified that, from the fact that the steering wheel was adjusted to the front axle, the force of the impact caused the wheel to strike him and he was thereby severely injured. Plaintiff's younger brother, who was in

the truck at the time, removed him from the truck to the ground, and plaintiff was then taken to a hospital where he was placed in a cast from his chest down to his knees in which he remained for approximately four and a half weeks, and when he was subsequently removed to his home he lay on a cot for about a month. He testified that he walked a little, but that he had a pain in his side, and that, as he expressed it, he "always had that tingling" in his foot or leg, and was "kind of dizzy;" that the first work he did was more than six months after the accident and shortly before Christmas, and that the work then consisted in carrying small boxes at a store for a day and a half, and that it made him so tired that he could not sleep and the tingling in his foot grew worse and the pain in his side was constant; that he consulted a doctor and was advised by him not to attempt any work and he did no work from thence until the trial, and that his left leg was then stiff and he became tired easily. Plaintiff testified that he weighed 142 pounds before the accident and about 115 pounds when he left the hospital.

In respect of the brakes, a witness who had driven the truck shortly before the accident testified that he had adjusted both the foot brake and the hand brake and that they were then in good condition. To substantially the same effect was the evidence of Rudolph Kreisels, the owner of the truck. This witness testified that shortly after the accident the defendant informed him that he "backed out of the drive and he got out in the middle of the street and killed his engine, and then by that time he said he never noticed the truck coming, but his wife noticed the truck coming and she holloed the truck was coming. He said he was kind of excited and he killed his engine and by that time the truck kind of coasted forward. Q. You mean the truck or car? A. I mean the car coasted forward and crowded the truck over the curb." The truck owner further testified that defendant, on the day of the accident, "said the kid done a wonderful job of driving just at that point, you know."

The defendant testified that the truck "did not appear to be coming very fast," and that he heard plaintiff honking the truck horn and heard him yell. He denied that he killed the engine of his car, but testified that his car was stationary in the street only long enough to change gears, and he denied ever telling any one that he had killed his engine in the middle of the street. True, in his answer, defendant alleged that plaintiff was exceeding a lawful rate of speed, but on the cross-examination he testified that plaintiff was going no faster than 10 to 15 miles an hour, and that he saw the truck coming but continued to back out of the driveway into the street, and he said that he assumed that he "would have plenty of time to get out of the way."

From the evidence of the defendant's wife, who was in the car at the time, it appears that she first noticed the truck when it was crossing the intersection nearby, and that she heard honking about the time the rear wheels of her husband's car reached the street from the driveway, and that about the time they started to back into the street the truck was about 60 or 70 feet away.

Dr. Clayton Andrews, called by plaintiff, treated plaintiff after the accident. He testified that at the time plaintiff "had the appearance of a man that has been recently hurt and fairly badly shocked. He was in severe pain and there was some abdominal distention, and complaint of pain around his pelvic bones, unable to walk, and pain on motion in his legs and back, or his pelvis rather, and shock condition from the accident, plus the pain and inability to move his affected parts;" that plaintiff was put in a cast and remained at the hospital from June 5 until July 8, 1927, and that he came back to see the witness once a week for a month thereafter; that plaintiff appeared to be in pretty good condition, but later, after he had done work, he complained of pain in his leg and foot; that there would subsequently perhaps be a slight limitation of motion which might entirely disappear or which might not.

Dr. Deppen, called by defendant, testified that he ex-

amined plaintiff in September, 1927, at the request of defendant's attorney; that he had a complete history of the plaintiff's injury; that he made X-ray pictures of the plaintiff which disclosed fractures that had apparently healed, and found that the muscles were smaller around the left hip or left leg than they were on the right side, due to disuse and from being in a cast, but that the conditions he named would ultimately disappear. He corroborated plaintiff's evidence in that he advised him not to go to work at that time on account of physical conditions arising from the injuries complained of.

Under the law and the facts, the issues here involved were clearly for the jury. *Frish v. Swift & Co.*, 97 Neb. 707. On a like situation this observation has been made:

"Backing out from private property onto a public highway is an operation demanding a high degree of skill and caution to avoid danger or injury to any person on the highway or collision with any vehicle thereon, and one engaged in such operation must use greater care than would be required of one driving along the highway." 42 C. J. 1022, sec. 759, and cases there cited.

In *Uhl v. Fertig*, 56 Cal. App. 718, this rule was announced:

"As between a motor vehicle moving along a main artery of travel and another vehicle emerging from private ground abutting the highway, the former must be conceded the first right to pass."

The rule is aptly stated in *Kemmish v. McCoid*, 185 N. W. 628 (193 Ia. 958): "The duty of the driver of a vehicle, about to enter upon the highway from a private drive, to look for vehicles approaching on the highway implies the duty to see what was in plain sight, unless some reasonable excuse for not seeing is shown."

An answer to defendant's argument of contributory negligence and rapid driving on the part of plaintiff is that the defendant himself testified, as noted above, that plaintiff was driving at a rate that did not exceed 10 to 15 miles an hour.

Complaint is made by defendant of certain of the court's instructions. Defendant argues: "This court has uniformly held that it is the duty of the court to instruct the jury in the law of the case, and to fairly cover the issues, whether requested by counsel to do so or not; and that failure to do so is error." We think the argument is not applicable to the fact. The jury were fairly instructed upon every material issue here involved, and we are unable to find that any of the submitted instructions could have resulted in the deprivation of any substantial right to either party litigant. In *Johnson v. Samuelson,* 116 Neb. 297, we held: "Where an instruction, though erroneous, is not prejudicially so and cannot by any course of logical reasoning be deemed to have resulted in disadvantage to the complaining party, it should not be allowed to work a reversal." We think the rule in the *Johnson* case is equally applicable to the facts in the present case. The evidence fairly supports the verdict and the facts come within the meaning of the law applicable thereto.

Additional assignments of alleged error are presented by defendant, but upon examination, and in view of the facts, we do not find it necessary to prolong the discussion herein. It follows that the judgment must be and it hereby is in all things

AFFIRMED.