352

OSCAR H. PETERSON, APPELLEE, V. SCHOOL DISTRICT NO. 68, LINCOLN COUNTY, APPELLANT.

FILED FEBRUARY 10, 1933. No. 28397.

*Beeler, Crosby & Baskins,* for appellant.

*Halligan, Beatty & Halligan* and *Milton C. Murphy,* contra.

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

DEAN, J.

Oscar H. Peterson, the plaintiff herein, began this action against the defendant school district No. 68, in Lincoln county, pursuant to the provisions of section 79-1902, Comp. St. 1929, to recover from the defendant district transportation charges of five cents a quarter mile for each day of actual attendance of four of his children in adjoining school district No. 67. Upon submission, the jury found for the plaintiff and against the defendant district in the sum of $380, with interest at the rate of

7 per cent. per annum from October 25, 1930, such sum being for transportation charges for 40 quarter miles in excess of the three-mile limit as provided under section 79-1902. From the judgment so rendered, the defendant district has appealed.

Section 79-1902, above cited, and so far as applicable here, provides that, where a child lives more than three miles from the public schoolhouse, which he or she is authorized to attend, by the nearest practicable traveled road, where no free transportation is furnished such child, a transportation rate of five cents per family for each day of actual attendance for each one-quarter of a mile or fraction thereof covering the distance of the residence from the schoolhouse in excess of the three-mile limit shall be paid each family by the district on the basis of the record of attendance. And it is also provided therein that any child whose family is entitled to pay for transportation may attend another school, if more convenient, or may reside with relatives or friends within three miles of the schoolhouse of his own school district, and in such cases, if entitled thereto, the family of such child shall be paid the transportation rate above mentioned.

The plaintiff's home is 13 miles distant from the defendant district's schoolhouse by a publicly maintained highway, but only 6 2/10 miles distant over a less traveled road.

The principal question for determination here is what constitutes the "nearest practicable traveled road," within the meaning of section 79-1902.

The plaintiff has been a resident of the defendant district for almost 14 years and, during the period in question, there were 4 children of school age in his home, the youngest being 6 and the eldest 11 years of age. During the years 1929 and 1930, the defendant school district furnished no free transportation for the plaintiff's children, although request therefor was made. The school next nearest the plaintiff's home was located at or near

Ingham, five miles distant, where the plaintiff moved with his family. It does not appear, however, that a permanent residence was there established, but it is disclosed that the plaintiff leased a house in that vicinity during the school term and that, at the expiration thereof, he obtained an extension of the lease because of his wife's illness. The plaintiff meanwhile spent much time at his farm home in the defendant district and the family subsequently returned to the farm.

During the 1929 and 1930 term of school, as disclosed by the record of attendance, the plaintiff's children attended school in the adjoining district a total period of 172 days. During the 1930 and 1931 term, however, the plaintiff was unable to pay the required tuition and his children were therefore in school a total of only 18 days during that term. The plaintiff thereupon began this action to recover for expenses necessarily incurred by him in placing his children in the most convenient school on the basis of the distance they would otherwise have had to travel in going to and from school in their own district over the nearest practicable traveled road.

It is the contention of the defendant district that the road referred to as the six-mile road is the nearest practicable traveled road, within the meaning of the statute, and that recovery should therefore have been allowed the plaintiff on that basis instead of on the basis of the thirteen-mile road, as found by the jury.

In respect of the six-mile road, the evidence discloses that the road leaves the highway at a point two or three miles from the plaintiff's home and winds through a canyon which is about a mile long. At the head of the canyon is a steep hill and the road at this point is very narrow and it is impossible for two vehicles to pass thereon at the same time. It appears that the road was built into the bank on one side, and that, on the other side, there is a sheer drop at one point of from 40 to 50 feet, unprotected by any guard railing. The road is through privately owned ground and has never been main-

tained by public authorities. It passes through pasture land where cattle graze and where it is necessary to open and close at least three gates before the highway leading on to the schoolhouse in the district is reached. And it also appears that the clay soil becomes very slippery during wet weather, and that the road at times is impassable after a heavy rain or snowfall.

Witnesses on the part of the plaintiff testified that the road is unsafe for children, and that the canyon hill is so steep that it is impossible to see the approach of another vehicle from the opposite direction in time to turn back, and that the road is too narrow for two vehicles to pass at the same point. One witness testified that he resided within the defendant district, but that he also sent his children to school in the adjoining district from the fact that he did not think they could safely get through the six-mile road alone, and another testified that the road is nothing more than a "cow-trail."

Witnesses for the defendant testified that the road is narrow and some times impassable in wet weather, and that deep ruts often remain in the road after a heavy rain or snow and until some person voluntarily removes them. And they also testified that the road is not maintained by public authority, but that they anticipate no trouble if the car they are driving is equipped with good brakes. Several, however, testified that they did not consider it safe for children to go over the road alone.

In respect of the longer route, known as the thirteen-mile road, however, the evidence generally is that such road is regularly traveled and maintained, and that it is used for the delivery of mail and is passable throughout most of the year.

The ultimate purpose of the act here in question, of course, is to provide that every child of school age may have and enjoy the opportunity afforded by the public schools, and to provide that children living a long distance from school may avail themselves of the same privileges and the same opportunities that are afforded

those living in close proximity thereto. And to equally distribute the burden of such educational opportunities among all the taxpayers, the legislature has provided for the payment of transportation allowances to reimburse the parents of children who live more than three miles from the school in their own or another district.

The consequences that will result from construing the provisions of a statute should be taken into consideration in determining the intent of the legislature. *Howard v. Jensen,* 117 Neb. 102; *Andrews v. School District,* 183 Wis. 255; *Pagel v. School District,* 184 Wis. 251. Surely the beneficent purpose of the act is defeated if one of the parents of children living more than three miles from a school must, by reason of the dangers attendant on a route such as that in question, each day accompany his or her children. In the interpretation of a statute, the court will endeavor to ascertain the legislative intent and, if lawful, to give it effect.

The six-mile road was apparently established by some individual for his own convenience and it has subsequently been used by others living in the community. There are none who are not more or less familiar with a "short cut" route in any locality, but clearly the legislature did not have such a road in mind in the transportation of school children, whether they are accompanied or alone. In the use of the term "practicable traveled road" the legislature must have contemplated a road that is not only conveniently accessible, but one that is recognized by the public and maintained in a reasonably safe and proper condition for travel. See *Derichs v. Lake Creek School District,* 57 S. Dak. 586, and *Eastgate v. Osago School District,* 41 N. Dak. 518. A road that is not publicly maintained and which is located over private property, where it is necessary to open and close gates to prevent the escape of cattle and over which travel is precarious, cannot be said to be a practicable traveled road, within the meaning of the statute. Nor can a road be "practicable" if it is necessary for a parent to daily leave his

work and accompany his children to school merely because the road is unsafe for them to go over alone. Such was not the intent of the legislature.

Complaint is made in the giving of certain instructions and also in the refusal of the court to give those tendered by the defendant. Upon examination we do not find reversible error in the ruling of the court thereon. It is elementary that a judgment in a civil case will not be reversed by reason of error in instructions which do not substantially affect the rights of the complaining party and where such judgment is sustained by a preponderance of the evidence. Comp. St. 1929, sec. 20-853; *Vandervert v. Robey*, 118 Neb. 395; *Stiefler v. Miller*, 120 Neb. 6, 11; *City of Schuyler v. Verba*, 120 Neb. 729. The judgment appears clearly to reflect the intent of the legislature, and it is therefore

AFFIRMED.