MORRIS ROBERTS, APPELLEE, V. THEODORE CARLSON, APPELLANT.

8 N. W. (2d) 175

FILED FEBRUARY 17, 1943. No. 31507.

852

*Mothersead & Wright,* for appellant.

*Morrow & Miller* and *Frank P. Johnson, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESS-MORE, YEAGER, CHAPPELL and WENKE, JJ.

CHAPPELL, J.

Plaintiff and defendant, each driving his own car, had an accident at the center of graveled intersecting country roads. Plaintiff approached the intersection from the right and defendant from the left. A jury's verdict awarded plaintiff $1,200 damages. Defendant appeals, impressing upon this court by able brief and argument that plaintiff was guilty of contributory negligence more than slight as a matter of law, requiring the trial court to sustain his motions to direct a verdict for defendant, and that the trial court erred in its refusal of certain requested instructions and the giving of others, more particularly instruction No. 21. A careful study of the entire record and applicable rules of law requires an affirmance of the judgment.

Defendant's motions, made at the close of plaintiff's case and renewed at the conclusion of all the evidence, to instruct the jury to return a verdict in his favor were each respectively overruled. To determine whether this was erroneous we examine the evidence, bearing in mind these well-known and oft-established rules: A motion for a directed verdict must for the purpose of decision thereon be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed. Such party is entitled to have every controverted fact resolved in his favor, and to have the benefit of every inference that can reasonably be deduced from the evidence. *Parks v. Metz,* 140 Neb. 235, 299 N. W. 643. Also, if contributory negligence is relied upon by defendant as an affirmative defense, the burden is upon him to prove it by a preponderance of the evidence pertinent to that issue contained in the whole record, except in so far as the same may appear in evidence adduced for the plaintiff. *Vertrees v. Gage County,* 81 Neb. 213, 115 N. W. 863; *Schrage v. Miller,* 123 Neb. 266, 242 N. W. 649.

The evidence discloses that on February 15, 1941, between 2 and 3 o'clock p. m., plaintiff, traveling west on the right side of a graveled country road at 35 miles an hour,

looked to the left when he passed a high beet dump and scale house on the south side of the road 325 feet east of another intersecting graveled country road. Plaintiff failed to see any car coming from the south, although he continued to look to the left while he drove 100 feet. He then looked to the right until his vision cleared the intersection from the north for cars having the right of way over him, where the view was obstructed by trees, farm buildings, and a board windbreak abutting on the northeast corner. He then looked to the left again and, when approximately 40 feet from the intersection or 80 feet from the center thereof, he first saw defendant driving 40 miles an hour toward him from the south, at a point 15 feet south of the railroad track, the north rail of which was 72 feet from the center of the intersection. A standard gauge railroad is 4 feet 8½ inches wide. Webster's New International Dictionary (2d ed.) On this assumption defendant was then approximately 91 feet 8½ inches distant from the center of the intersection.

Plaintiff instantly applied his brakes and skidded in the loose gravel to a point where the left front fender and headlight of his car and the right front fender and headlight of defendant's car collided at the center of the intersection. Thereafter plaintiff's car traveled to the north and west 47 feet 6 inches, and defendant's car traveled to the north and west 54 feet 10 inches. The state patrolman saw and measured the skid marks of plaintiff's car in the loose gravel, caused by putting on his brakes. They extended 38 feet up to the point of collision. He found no skid marks showing that defendant had applied his brakes. We find no evidence in the record that defendant made any effort to avoid the accident.

The cars were badly damaged and both plaintiff and defendant were injured. There is some evidence that defendant had no recollection of facts concerning the accident and that he did not testify for that reason. However, on the day that plaintiff left the hospital, in the presence of plaintiff and his wife, defendant told plaintiff, "he (defendant)

was just looking the other way and that he just never at any time had seen me (plaintiff) and he thought he was just looking the other way." There is no direct admission in the evidence adduced for plaintiff or direct evidence adduced for defendant denying that plaintiff looked at the times, places, and in the manner claimed by him. Defendant's reliance upon *Haffke v. Missouri P. R. Corporation,* 110 Neb. 125, 193 N. W. 257, and *Nelson v. Plautz,* 130 Neb. 641, 265 N. W. 885, can be of little assistance to him under the circumstances. Considering the two cases we scan a difference from the case at bar. The plaintiffs in these cases *never looked again.*

It is admitted that plaintiff's view of the intersection from the north, where cars would have the right of way over him, was obstructed as claimed by him. It is also admitted that the high beet dump and scale house, 325 feet east of the intersection, which before the trial had been removed, obstructed his view to the south at that point. Further, it is admitted that the railroad tracks, running a little to the southeast but almost parallel with the east and west road, and approximately 40 feet south of it at the intersection, had an elevation above the road which partially obstructed a view of cars coming from the south.

We will not recite other evidence in detail lest this opinion be unduly prolonged. However, it is clear from admitted facts, the testimony of witnesses, pictures, and other evidence appearing in the record, that there is a conflict in the evidence on the question of whether or not trees, weeds along the roads, and the railroad grade with weeds along its higher crest, obstructed plaintiff's view of cars coming from the south in some places along the north and south road when he first looked to the left.

This evidence answers defendant's contention that it was plaintiff's duty to look for cars approaching on the highway from the south and his duty to see what was *in plain sight.* In *Vandervert v. Robey,* 118 Neb. 395, 225 N. W. 36, and *Bergendahl v. Rabeler,* 133 Neb. 699, 276 N. W. 673, cases relied on by defendant, we gave approval to the rule, with

this qualification applicable here, "unless some reasonable excuse for not seeing is shown."

Under the evidence the physical facts and circumstances appearing are not decisive of the case as claimed by defendant, for the reasons set forth in *Jones v. Union P. R. Co.*, 141 Neb. 112, 2 N. W. (2d) 624.

Upon approaching a highway intersection, it is the duty of the driver of an automobile to look to the right and left for approaching vehicles; whether or not he did his full duty in that regard may, in some cases, be a question of law where undisputed evidence or physical facts and circumstances control, but otherwise it is ordinarily one of fact for the jury upon consideration of all the evidence. *Thrapp v. Meyers*, 114 Neb. 689, 209 N. W. 238.

The rule is that, where two motorists approach an intersection at or about the same time, the driver approaching from the right has the right of way, and he may ordinarily proceed to cross, having a legal right to assume that his right of way will be respected by the other driver (*Bergdahl v. Rabeler, supra*), but if the situation is such as to indicate to the mind of an ordinarily careful and prudent person in his position that to proceed would probably result in a collision, then he should exercise ordinary care to prevent an accident, even to the extent of waiving his right of way. These rules were clearly established by this court in *Thrapp v. Meyers, supra*, and we have later given them approval in other cases. In this case, their substance appears in the trial court's instructions to the jury.

We call attention to the fact that at defendant's insistence the jury went to view the premises, and at defendant's request, made a part of the record, their cars were driven back to a certain place so that they could make observations as to the visibility of the two roads. After taking into consideration the result of their observations at the *locus in quo*, together with the other evidence, as they had a legal right to do (*Carter v. Parsons*, 136 Neb. 515, 286 N. W. 696), the jury settled the questions involved by returning a verdict for plaintiff and against defendant.

The case at bar is certainly one where there is no yardstick with which to measure or scales with which to weigh plaintiff's alleged negligence as a matter of law. Only when the standard is clear should it be determined by the court.

We have carefully examined the entire record and conclude that the questions of negligence and contributory negligence were questions for the consideration of the jury, and the jury's findings are conclusive upon such questions, provided the case was otherwise properly submitted for their consideration.

Referring to the giving or refusal of instructions, defendant complains of the last sentence in instruction No. 21 given by the trial court. It reads: "Yet you have no right to reject the testimony of any of the witnesses without good reason, and you should not do so until you find it irreconcilable with other *testimony* which you may find to be true." Defendant asserts that the word "testimony" is used instead of "evidence;" that plaintiff testified about the factual details of the accident, while defendant, an elderly man, injured in the accident, was at the time of trial unable to recall and testify to any of them. Defendant contends that plaintiff was thereby given a prejudicial advantage because testimony is evidence given by living witnesses orally, and evidence, the broader term, would have included both that which is given by witnesses orally and the physical facts and circumstances which often speak more effectually than witnesses.

Evidence would have been the better word, but in common language the words "testimony" and "evidence" are used synonymously and interchangeably. 15 Words & Phrases (Perm. ed.) 405. We have held that, where from an inspection of the entire record it is obvious that the word "testimony" was used with reference to the "evidence," they may be accorded such extended significance. *Woolworth v. Parker*, 57 Neb. 417, 77 N. W. 1090; *Columbia Nat. Bank v. German Nat. Bank*, 56 Neb. 803, 77 N. W. 346.

The use of the word "testimony" instead of "evidence" in an instruction, where both oral evidence and physical facts and circumstances are defensively interposed, does not constitute reversible error where it is clear and obvious from all the court's instructions that it was intended that such physical facts and circumstances should also be considered by the jury. 15 Words & Phrases (Perm. ed.) 404, 405; *State v. Winney,* 21 N. Dak. 72, 128 N. W. 680; *Jones v. City of Seattle,* 51 Wash. 245, 98 Pac. 743; *Zipus v. United Railways & Electric Co.,* 135 Md. 297, 108 Atl. 884; *Fitzgerald v. Benner,* 120 Ill. App. 447, affirmed in 219 Ill. 485, 76 N. E. 709; *Jones v. Gregory,* 48 Ill. App. 228.

In determining whether there is error in the giving of a sentence in an instruction, it must be considered in connection with the instruction of which it is a part and all other instructions given by the court. The true meaning of instructions is to be determined not from a separate phrase or paragraph, but by considering all that is said on each subject or branch of the case. *Lincoln Traction Co. v. Brookover,* 77 Neb. 221, 111 N. W. 357; *Schrage v. Miller,* 123 Neb. 266, 242 N. W. 649.

By doing this in the case at bar we find the court instructing the jury that in determining the issues they should take into consideration the evidence, the circumstances surrounding the accident involved, and the entire situation and circumstances as existed at the time, including the obstructions to view, if any, and rate of speed of the motor vehicles involved. Therefore, the jury could not have been misled by the instruction, and the giving of it was not prejudicially erroneous.

We have also examined the entire record and authorities relied upon by defendant in support of his assignments of error concerning the giving or the refusal of other instructions, and decide that there were no errors therein prejudicial to defendant. Those refused were substantially given in other forms or rightly refused. Instructions given by the court properly submitted the issues of negligence and contributory negligence to the jury for their consid-

eration. We conclude that the verdict is amply supported by the evidence in the record, and that the judgment should be, and it is hereby, affirmed.

AFFIRMED.