WILLIAM HOWARD SPAULDING, APPELLEE, V. JOHN HOWARD, APPELLANT.

27 N. W. 2d 832

Filed June 6, 1947.   No. 32208.

*Armstrong & McKnight,* for appellant.

*Jean B. Cain, Dan J. Riley,* and *Wendell Miller,* for appellee.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

MESSMORE, J.

This is an action at law brought by the plaintiff to recover damages to his automobile and to his person, alleged to have been caused by the negligence of the defendant when plaintiff's automobile and defendant's truck collided.

The plaintiff's petition sets forth several charges of negligence against the defendant which he claims constitute the direct and proximate cause of the accident and the resulting damages to his automobile and person. The defendant's answer denies the affirmative allegations of the plaintiff's petition, and alleges that any damage to the plaintiff's automobile or to his person, sustained by virtue of the accident, was the direct and proximate result of the plaintiff's negligence. The cross-petition charges the plaintiff with negligence in certain respects, alleging that the plaintiff's negligence, so charged, was the direct and proximate cause of the accident resulting in damage to the defendant's truck, and the doctor bill which he paid in behalf of his wife. The reply, in effect, is a general denial to the answer. The answer to the cross-petition denies the allegations of negligence charged against the plaintiff contained therein.

The record discloses the plaintiff, a discharged war veteran, 27 years of age, on February 6, 1946, purchased a 1935 LaSalle coach in St. Joseph, Missouri for $625, and after the accident here involved it was worth $100. After purchasing the car he proceeded from St. Joseph to Dawson, Nebraska, to visit his mother. At a point about six miles north of Falls City, Nebraska, he was driving on highway U S 73, an arterial highway extending north from Falls City having a cement surface 20 feet in width. At this point the highway makes a wide curve to the west, and approximately 200 feet north of the point where the curve commences, the highway joins with a gravel-surfaced road which proceeds to the east, referred to as the Barada road. There

is a continuous down grade of highway U S 73 toward the north for a distance of about half a mile south of the curve heretofore mentioned. The highway markings in this vicinity, as testified to by an engineer, are as follows: 573 feet south of the intersection of the Barada road on highway U S 73, is a standard United States highway sign; further south, a distance of 873 feet from the Barada intersection, is a highway mile sign; 1691 feet south from the Barada road intersection is a steel post by a flume at the edge of the highway. On each side of the Barada road where it intersects with highway U S 73 are stop signs, approximately 38½ feet distant from the east edge of the paved surface of highway U S 73.

The defendant, aged 52, engaged in farming for more than 30 years and living 16 miles north of Falls City, left his home about 1:15 p. m. the afternoon of February 6, 1946, which was a nice, sunshiny day. The surface of the road was dry. He was accompanied by his wife, and driving a 1940 International truck equipped with a stock rack, and loaded with livestock. The total weight was approximately 13,000 pounds, including the livestock. The defendant was familiar with the Barada road which he followed, having driven it for many years on an average of from two to six times a week. Arriving at the stop sign on the Barada road at about 2:00 or 2:30 in the afternoon, he stopped his truck adjacent to the stop sign on the south side of the road at the approximate distance of 38½ feet east of the east edge of the paved surface of highway U S 73. His version as to what occurred thereafter, and as testified to by him in substance, is as follows: After stopping he looked to the right, or to the northwest; there were no cars in sight. He then looked to the south and saw a car, which later developed to be the plaintiff's car, which was a little south of the steel post, a distance of 1691 feet from the intersection. He estimated the plaintiff's car was south on highway U S 73 about 1800 feet

distant from the intersection. He then proceeded into the intersection at a speed of two or three miles per hour, and when the front wheels of the truck were in the middle of the pavement, he saw the plaintiff's car which at that time was near the highway sign 873 feet south of the intersection. He drove in an arc, or circle, for the reason the Barada road is on a curve and the paving curves at this point, traveling a little less than 38½ feet to reach the pavement on the highway. He then proceeded a distance of 97½ feet south on the highway, with his entire truck on his own right hand side of the highway, or on the west side thereof. His speed in negotiating his truck in such manner averaged five miles per hour. The plaintiff was on his right hand side of the highway and driving at a high rate of speed, and when approximately within 15 to 20 feet of the defendant's truck, he angled a trifle, crossing to the left hand side of the highway and, as described by the defendant, with the speed of a "cannon ball" collided with the defendant's truck, striking the truck on the bumper, bending the frame and the cross bar across the front of the frame of the truck; the right wheel of the plaintiff's car striking the left corner of the bumper of the truck while the truck was in forward motion. The impact knocked the truck back across the road at least five feet, as indicated by the burned rubber mark on the road made by the left front wheel of the truck. When the plaintiff's car came to a stop it was up on the grass on the west side of the highway, possibly with one of its hind wheels on the pavement. It faced northwest. The right rear wheel of the truck was practically on the center of the cement highway, to the right. After the truck was hit, the front end of it was pushed toward the west; the rear of the truck was pushed to the east, and the right hind wheel was on the line which divided the 20 foot paved surface of the highway.

The defendant's wife testified that when the truck

stopped she looked to the south and saw the plaintiff's car south of the highway sign which is a distance of 873 feet. The plaintiff was proceeding at a high rate of speed, and when within 15 to 20 feet of the truck his front wheels turned directly and came across in front of the truck. The truck, at the time, was on the west side of the center line of the highway, or on its proper portion of the highway. The defendant was driving at a speed of seven or eight miles per hour.

The plaintiff's version of the collision, according to his testimony, is in substance as follows: When he was 200 feet distant from the intersection he saw defendant, and the front wheels of the truck were on the highway. He blew his horn, believing the defendant would stop, and swerved to the left endeavoring to miss him, and if the defendant had stopped, he would have missed him. However, the defendant proceeded on, and hit the plaintiff's car on the front fender with the bumper of the truck, pushing the plaintiff's car over the paved slab to the west. There was no forward movement of either the car or truck thereafter. The truck was going about five to ten miles per hour. Immediately after the accident the truck was headed almost exactly straight west into the bank, across the paved surface of the highway. The front end of the truck, the bumper and the grille were pushed against the right front fender of the plaintiff's car, and the right front wheel of plaintiff's car was lying almost flat under the truck. The endgate, or rear, of the truck was not over a foot off the pavement on the east side. In other words, the truck and plaintiff's car completely blocked the highway and no one could get by, either from the north or south, without pulling completely off the pavement on the east side of the highway.

After the accident the plaintiff examined skid marks made by the tires of his car at the time he saw the truck approaching the highway. They were about 20 feet long, proceeding north and a little to the west on the

pavement. The right front fender of plaintiff's car was completely demolished; the right front tire blown out by the impact; the radiator destroyed; the grille and hood bent; and the frame and cowl bent where the fender pushed against the truck. He testified the bumper of the truck collided with the front fender on the right side of his car; and that his bumper never touched the truck. The defendant testified that when the plaintiff left the paving, his car hit the bumper of the truck which smashed down his right front wheel; that when the plaintiff's car struck the ground it made a mark for 13 feet and 2 inches; and that there was a pile of gravel in front of his radiator caused by plowing up the side of the road. The plaintiff testified that the pile of gravel in front of his radiator was directly opposite the place where the Barada road enters the intersection of highway U S 73.

After the accident the defendant went over to the plaintiff's car, told him to shut off his radio, asked him if he was hurt, and then walked with him and endeavored to explain his version of the accident and show the plaintiff where it happened.

The evidence with reference to the injuries to the plaintiff, the damage sustained to his automobile, the damage sustained to the truck of the defendant, and the medical bill paid by the defendant in behalf of his wife is all in the record and need not be reviewed.

The case was submitted to the jury which returned a verdict in favor of the plaintiff. Upon overruling the motion for new trial judgment was entered on the verdict. Defendant appeals.

For convenience, the appellant will be referred to as the defendant, and the appellee as plaintiff.

The defendant contends that the verdict of the jury and the judgment entered thereon is contrary to the evidence and the law.

At the close of all the evidence the defendant moved for directed verdict, which was overruled.

The general rule in this jurisdiction when a motion for directed verdict is made, follows: "A motion for a directed verdict must for the purpose of decision thereon be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed. Such party is entitled to have every controverted fact resolved in his favor, and to have the benefit of every inference that can reasonably be deduced from the evidence." Roberts v. Carlson, 142 Neb. 851, 8 N. W. 2d 175. See, also, Halliday v. Raymond, 147 Neb. 179, 22 N. W. 2d 614; Gutoski v. Herman, 147 Neb. 1001, 25 N. W. 2d 902. We consider the evidence in conformity to the foregoing rule.

There is a sharp conflict in the evidence as to where the collision occurred. The plaintiff contends the collision occurred where the Barada road intersects highway U S 73, at about the center of the intersection, while the defendant contends the collision occurred 97½ feet south of the intersection of the Barada road and highway U S 73, on the west side of the pavement.

"In a law action it is error for the trial court to direct a verdict for either of the parties on an issue of fact on which the evidence is conflicting. Such issue should be submitted to the jury for their determination." Stoffel v. Metcalfe Const. Co., 145 Neb. 450, 17 N. W. 2d 3; Gutoski v. Herman, *supra*.

The defendant cites the rule set forth in Bergendahl v. Rabeler, 133 Neb. 699, 276 N. W. 673, which follows Vandervert v. Robey, 118 Neb. 395, 225 N. W. 36, as follows: "The duty of the driver of a vehicle * * * to look for vehicles approaching on the highway implies the duty to see what was in plain sight." We gave approval to the rule with this qualification, "unless some reasonable excuse for not seeing is shown." Roberts v. Carlson, *supra*.

It is clear from the evidence that the defendant saw the plaintiff's car 1,800 feet south of the intersection when he stopped. He elected to proceed across the in-

tersection at a rate of speed averaging five miles an hour. The plaintiff did not see the defendant's truck when he was 1,800 feet distant from the stop sign on the Barada road, and saw it for the first time when he was within 200 feet of it. It is a question of fact as to the negligence of the parties as to what they did or did not see, or what they should or could have seen.

The following authority is also applicable under the facts in this case: "Where a driver of an automobile is suddenly confronted with an emergency requiring instant decision, he is not necessarily guilty of negligence in pursuing a course which mature reflection or deliberate judgment might prove to be wrong." Riekes v. Schantz, 144 Neb. 150, 12 N. W. 2d 766.

In the instant case the plaintiff testified that he believed the defendant would stop and permit him to pass to the left, and when the defendant did not stop, the plaintiff angled a little more to the left and the collision occurred. Under the plaintiff's evidence the plaintiff could not have passed to the east, or right, of the defendant's truck. He testified if he had done so he would have hit the cab of the defendant's truck directly.

The defendant contends that the plaintiff was driving his car at such speed that he was unable to stop or turn aside in time to avoid the truck which was discernible within the range of his vision, and therefore was negligent, relying on Ross v. Carroll, 138 Neb. 1, 291 N. W. 726, and Hardung v. Sheldon, 133 Neb. 427, 275 N. W. 586. In the cited cases the question of negligence in such respect was for the jury to determine, as it is in the case at bar.

The defendant contends that the trial court erred in giving instruction No. 6. This instruction placed the burden of proof upon the defendant to establish by a preponderance of the evidence that the plaintiff operated his automobile negligently in one or more of the particulars set up in the answer and cross-petition, and that such negligence, so established, was the proximate cause

of the injuries to defendant's wife and truck, and the amount of damages he has sustained by reason of plaintiff's negligence.

"If the defendant pleads that the plaintiff was guilty of contributory negligence, or that the accident resulted solely from his negligence, the burden is upon the defendant to prove those defenses, and does not shift during the trial of the case, but he should receive the benefit of the plaintiff's evidence tending to prove those issues." McGahey v. Citizens Ry. Co., 88 Neb. 218, 129 N. W. 293. See, also, McCulley v. Anderson, 119 Neb. 105, 227 N. W. 321; Roberts v. Carlson, *supra;* Schrage v. Miller, 123 Neb. 266, 242 N. W. 649.

The defendant contends that he is not claiming in his cross-petition any damages for injuries sustained by his wife. He does ask for $15.45 for her medical expenses. He testified that she had a hospital and doctor bill. Obviously there would be some occasion for the trial court to instruct with reference to this item.

"Where an instruction, though erroneous, is not prejudicially so and cannot by any course of logical reasoning be deemed to have resulted in disadvantage to the complaining party, it should not be allowed to work a reversal." Johnson v. Samuelson, 116 Neb. 297, 216 N. W. 810.

The defendant objects to other instructions which were requested, and some which were given by the trial court.

"When instructions requested are substantially given in the charge prepared by the court on its own motion, it is not error to refuse to repeat them, though expressed in language different from that used by the court." Curry v. State, 5 Neb. 412. See, also, McGahey v. Citizens Ry. Co., *supra.*

From an examination of the instructions given by the court on its own motion, and those tendered and refused, we conclude the trial court did not err in re-

fusing requested instructions and in giving instructions on its own motion.

"Where evidence is in conflict and such that reasonable minds may draw different conclusions therefrom, the questions of negligence and comparative and contributory negligence are for the determination of the jury." Parks v. Metz, 140 Neb. 235, 299 N. W. 643. See, also, Grantham v. Watson Bros. Transportation Co., 142 Neb. 362, 6 N. W. 2d 375; Hardung v. Sheldon, *supra;* Gutoski v. Herman, *supra.*

For the reasons given in this opinion, the verdict and judgment of the trial court is affirmed.

AFFIRMED.